(35 South. 757.)

No. 14,888.

BARNIDGE et ux. v. KILPATRICK.

(Jan. 4, 1904.)

MARRIAGE LICENSES—GRANT BY CLERK OF COURT—NEGLECT OF DUTY.

1. The existing provision of law as to the precise circumstances and evidence under which clerks of court are authorized to issue marriage licenses are of a very general character, and what is called for in each case is left very much to their sound judgment and discretion.

2. When a clerk of court does not know and has never seen the intended wife, and there is nothing in the particular case calculated to arouse his suspicions as to her being a minor, he is not guilty of negligence and failure of official duty, and liable in damages, for granting a license, relying upon the truthfulness of statements made to him by the intended husband and the friend accompanying him, who signed as surety on the bond, required to be given under article 101 of the Civil Code, that the parties were of age, and everything was right.

(Syllabus by the Court.)

Appeal from Thirteenth Judicial District Court, Parish of Rapides; W. F. Blackman, Judge.

Action by J. J. Barnidge and wife against Charles M. Kilpatrick. Judgment for defendant, and plaintiffs appeal. Affirmed.

John Holmes Overton, for appellants. White & Thornton and T. W. Holloman, for appellee.

### Statement of the Case.

NICHOLLS, C. J. The plaintiffs are the father and mother of Lennie Barnidge, now the wife of W. K. Poole. The defendant is clerk of the district court for the parish of Rapides.

It is alleged that he, in his capacity of clerk of court, issued on the 5th of December, 1902, a license authorizing any minister of the gospel, judge, or justice of the peace, to unite in the bonds of matrimony their said daughter Lennie and W. K. Poole, and that, under and by virtue of said license, J. R. Hart, justice of the peace, solemnized said marriage.

That at the time said license was issued their daughter was a minor 17 years of age, a school girl in short dresses, far too immature and undeveloped to marry; that the defendant issued said license without proof of their consent, and in violation of their legal rights as the natural guardians and protectors of their child; that said marriage was solemnized without their consent, knowledge, or suspicion, which marriage, had they known of it, they would have strenuously opposed, both on account of their daughter's

youth, and by reason of the objections which they had to a matrimonial alliance with the said Poole and his family.

That their daughter remained with her husband about two days, and then voluntarily abandoned him and returned to the parental home, where she had been ever since.

That the hopes and aspirations which they cherished for their daughter's future had been blighted, and that said marriage had proved a disgrace and scandal to them and their family, and had caused them to suffer great distress, anxiety, and mental anguish, all of which had been caused by the gross and willful violation of their rights by the defendant, by his unwarranted issuance of said license, without which said marriage would not have been consummated. For said injuries alleged, the defendant was indebted to them in the sum of $2,000 actual and compensatory damages, $300 exemplary and punitory damages, and $100 attorney's fees. They prayed for citation on the defendant, and judgment against him accordingly. Defendant, after filing an exception of no cause of action, answered, pleading the general issue. He admitted that he did, in his capacity as clerk of the court, issue a license authorizing and empowering any minister of the gospel, judge, or justice of the peace to unite in matrimony W. K. Poole and Lennie Barnidge, and that, by virtue of said license, J. R. Hart, justice of the peace, solemnized said marriage.

He denied specially that he issued said license without proof of plaintiffs' consent, and in violation of their legal rights as guardians and protectors of their child. He avers that he took due proof, and was assured and satisfied that there was no legal objection or parental objection thereto. He averred that he had issued the license in the usual and regular discharge of the duties of his office. Further answering, he averred that it was customary and usual, in case of parental objection, for parents to give notice to the clerk not to issue a license for the marriage of a minor child, and that no such notice was given in this case. He averred that W. K. Poole was a constant and habitual visitor of Miss Lennie Barnidge at the home of her parents before the marriage, that he was constantly received without objection, that he frequently escorted her as an escort; that his family was of equal social standing with theirs, that they allowed their daughter to visit at the home of the said Poole, and that, from the frequency of his visits, and the attentions which he paid to their daughter, he had full reason to conclude that he contemplated matrimony with their daughter, and they were guilty of contributory negligence in not filing an objection with the clerk of court, if they had objection to the marriage. He denied that plaintiffs had been damaged by his action in the premises.

## Opinion.

It is not disputed by defendant that the daughter of the plaintiffs was a minor at the time of her marriage, nor that her marriage was celebrated under a license for marriage granted by himself. The evidence shows that the defendant issued the license upon the faith of answers to him made by Poole, the applicant for the license, at the time of his application, and by Tanner, who was accompanying him to become his surety on the bond which the law requires to be given under article 101 of the Civil Code by the intended husband, and which bond Tanner then signed as surety, that "both parties were over age and everything was all right."

Plaintiffs insist that these replies were entirely insufficient to have justified or warranted defendant in issuing the license. They contend that he should have required direct evidence of the consent of the parents, and also of the age of the intended bride. The evidence shows that defendant was unacquainted with her, or any of the facts connected with the courtship between the parties, or their proposed marriage. Plaintiffs themselves testified that they did not anticipate, but were taken completely by surprise by, what occurred. Plaintiffs refer the court to article 97 of the Civil Code, in which it is declared that "the minor of either sex who has attained the competent age to marry must have received the consent of his father and mother or of the survivor of them, and if they are both dead the consent of his tutor. He must furnish proof of this consent to the officer to whom he applies for permission to marry," and contend that "proof," when used in a legislative enactment, means competent and legal evidence, or, in other words, testimony that conforms

to the fundamental rules of proof, one of which excludes hearsay testimony, however trustworthy the informant, or however explicit may be the belief in the truth of what he has heard; that it is a technical word, used in a technical sense, and implies the application, to some extent, of those rules under which evidence is ordinarily admitted. They quote in support of their contention Hunt v. Hill, 20 N. J. Law, 476; Inglis v. Schreiner, 58 N. J. Law, 122, 32 Atl. 131; Vosburgh v. Welch, 11 Johns. 175; Brown v. Hinchman, 9 Johns. 75; Betts v. Betts, 1 Johns. Ch. 197; Dabney v. Mitchell, 54 Ala. 200; Cotten v. Rutledge, 33 Ala. 110; 23 Am. & Eng. Ency. of Law (2d Ed.) p. 246, verbo. "Proof"; also same work, vol. 17 (2d Ed.) p. 732, note, and Wood v. Farnell, 50 Ala. 546.

Defendant, on the other hand, maintains that the word "proof" means "logically sufficient reasons for assenting to the truth of a proposition advanced"; that "quantity of appropriate evidence which produces assurance and certainty"—"the convincing effect of evidence"; that "to prove" is to "determine or persuade that a thing does or does not exist." He cites the Century Dictionary, Bouvier's Law Dictionary, and Buffalo Ry. Co. v. Reynolds, 6 How. Prac. 98.

Defendant contends that the conclusions which he reached in this case as to his right to issue the license were legally supported by the means which he adopted to ascertain the facts of the case; that, except in states where specific kinds of proof are required affixed by statute, the only kind and degree of proof required is that which is sufficient to convince a reasonable man; that affidavits are not essential under the requirements of the Civil Code of this state, or definitions of the word "proof."

Plaintiffs say: "The whole case resolves itself into the single question, did defendant receive proof?"

At one time the precise circumstances and evidence under which a license for a marriage could be issued were fixed by law. These special requirements were referred to in McConnell v. City of New Orleans, 15 La. Ann. 410, but they are no longer found in the Code. The present provisions of law on the subject are of a very general character, and what is called for in each case is left very much to the discretion and the sound judgment of

the clerks of court, under its particular state of facts. The standard which plaintiffs set up as that by which to test their legal responsibility in this matter is unreasonably high and severe. Plaintiffs suggest that defendant should have administered an oath to Poole and to Tanner. In State v. Theriot, 50 La. Ann. 1189, 24 South. 179, this court affirmed the judgment of the district court in that case, quoting the opinion therein of the trial judge to the effect that "The only question was whether the clerk of court, under the law, had authority to administer the oath, the assigned basis of the perjury. If he was not authorized to do so, then the indictment cannot be supported."

"Under article 101, Civ. Code, the only authority given to clerks in the matter of marriage licenses, is to require the intended husband to give a bond, with surety, in a sum proportioned to his means, with condition that there exists no legal impediment to the marriage. McConnell v. City of New Orleans, 15 La. Ann. 410; State v. Dole, 20 La. Ann. 378. * * * In a case of this kind, nothing is required but a bond, and the court is unable to see where the clerk derived his authority to administer the oath which this perjury has assigned. Flower v. Swift, 8 Mart. (N. S.) 451; State v. Wymberly, 40 La. Ann. 460 [4 South. 161]. * * *" And adding: "Such authority does not appear in this instance."

The argument of the plaintiffs that the laws regarding forms and ceremonies as to the celebration of marriages are intended to guard against hasty and inconsiderate marriages in defiance of parental authority (Holmes v. Holmes, 6 La. 470, 26 Am. Dec. 482) loses its force, so far as this result would be subserved by placing the parties under oath, and checking them through fear of the penalties affixed to perjury.

The declaration made in State v. Theriot that clerks of court were without authority to administer an oath to a party applying for a marriage license, and indirectly asserting that the only duty which devolved upon the clerk in the premises would be to require the execution of the bond provided for in article 101 of the Civil Code, was broader than the necessity of the case called for. All that was required to have been said was that, the crime charged being perjury, the indictment

was not sustainable, in view of the fact that the oath referred to was administered in a proceeding not judicial in character. To that extent the declaration made was undoubtedly correct. Though the declaration, in going further, must be held to have been obiter (Rev. St. § 462), clerks of court may well have governed themselves by it as being of a different character.

While we are of the opinion that clerks of court are authorized to administer an oath to parties applying for a license, we do not think they are under an absolute legal duty to do so, in the absence of circumstances which would call for such an oath in the particular case before them. We may say here, incidentally, that we are not prepared to accept as a closed question the opinion of this court in State v. Dole, 20 La. Ann. 378, to the effect that the impediments contemplated by article 105 of the Civil Code are only those which would render the marriage null.

Plaintiffs suggest that it was the duty of the defendant to have required from Poole the production of a written act, signed by the parents themselves, consenting to their daughter's marriage. An act signed by the parents before the parish judge in presence of two witnesses was at one time required, but, as we have said, there is no such requirement under the law as now existing. Article 98 of the Civil Code, providing that "those who have attained the age of majority on their demanding permission to marry must furnish to the officer proof of their having attained that age," is as general and mandatory in its language as to the necessity of "proof" as is the preceding article 97, and yet we do not think that written proof of that fact should be necessarily submitted to the clerk in each case.

If the parties contemplating marriage were both before him, their appearance, as to age, might be such as might well justify him in acting on appearances.

There was nothing in the case at bar which was calculated to arouse the suspicion of the clerk as to the necessity of greater care or caution than that which he took. We do not think he was guilty of negligence in the matter which would give rise to a right of action against him from any quarter. The jury which tried this case was evidently of that opinion. Our conclusions carry with them, as a consequence, the affirmance of the judgment.

Defendant insists that, as a public officer, he is not subjected to accountability to the plaintiffs for his actions in the premises; that the state alone is authorized to institute an action, the purpose of which is to subject him to punishment; that plaintiffs' daughter has returned to, and is still with, them, and they have not lost the benefit of her companionship; that the only damage set up by them is for mental anguish, and they do not stand so related legally to the subject-matter complained of as to entitle them to claim damages; that plaintiffs do not pretend that any contractual relations have ever existed between them.

The necessities of the case do not call for a decision upon the correctness of these positions.

For the reasons which we have assigned, the judgment appealed from is affirmed.