## No. 9545.

### Mrs. C. McCaffrey vs. J. H. Benson.

Persons legally married are, until a dissolution of marriage, incapable of contracting another.

Hence a marriage attempted by the wife of a previous marriage, before its dissolution by law or by the legal presumption of the death of her husband, is not valid. In a suit intended to enforce legal effects of such a marriage against the pretended second husband the latter as defendant can plead the nullity of the marriage by way of exception and without resorting to a direct action. No legal effects can result from such a union.

The term of absence without news of either of the spouses, which gives a sufficient cause to the other to contract another marriage, is ten years.

An absence of four years, unaccompanied by any circumstances tending to justify the belief that the absent husband is dead, is not sufficient to create the legal presumption of the validity of a second marriage contracted by the wife.

The burden of proof in such a case is on the wife who seeks to enforce the legality of her second marriage, to show that the absent husband was dead at the time that she attempted to contract another marriage.

APPEAL from the Civil District Court for the Parish of Orleans. Rightor, J.

W. B. Lancaster and J. O. Nixon, Jr. for Plaintiff and Appellee.

L. F. Bouchereau and J. Duvigneaud for Defendant and Appellant.

The opinion of the Court was delivered by

POCHÉ, J.   Plaintiff sues for a judgment of separation from bed and board against the defendant on the grounds of cruel treatment and of outrageous excesses.

Defendant first pleaded the general denial, and subsequently urged by way of a peremptory action that there was no legal marriage between him and plaintiff, for the reason that when he agreed to marry her, she was, by previous legal marriage, the wife of another man then living, and from whom she had never been legally separated. Hence

he prayed for a judgment recognizing the nullity of his marriage with plaintiff. He prosecutes this appeal from a judgment which overruled his exception and granted to plaintiff all the relief which she prayed for.

The undisputed facts of the record are as follows:

Plaintiff was legally married to one Christopher Anthony in April, 1848, and lived with him until 1851, when she voluntarily separated from him on the ground of general ill-treatment. Anthony remained in New Orleans until 1856, when he disappeared.

In 1859, plaintiff, believing that he was dead, contracted a marriage, valid in form, with the defendant, Benson. In 1861, Anthony reappeared, and was seen by several persons, some of whom testify that he was then a resident of the parish of Plaquemines, in this State.

The reappearance of Anthony brought trouble to the Benson household. Friends of the couple expressed the opinion that their union was illegal and was simply concubinage, and advised them to take steps to regulate their conjugal affairs. As rumors had reached plaintiff's family, asserting the death of Anthony since his reappearance, the parties adopted the plan of presenting themselves to a priest for a second nuptial benediction; that ceremony took place in 1865, but was not preceded by a license, and the fact was not registered on the archives of the church or of any other institution. This is the marriage which plaintiff declares upon in her action for separation.

The parties continued to live together as man and wife during the time which intervened between the reappearance of Anthony, in 1861, and the marriage of 1865. From this state of facts plaintiff draws two legal propositions:

1st. That the burden of proof is on the defendant to show that Anthony was yet alive in 1865.

2d. That the legal presumption is that Anthony was dead in 1865.

### I.

Under a proper construction of the law, it appears to us that plaintiff is in error in her first proposition.

We find no textual provision in our code, or in fact in the entire system of our laws, which justifies the presumption of death of any person after an absence of four years, or of less than five years.

In treating of the effects of absence respecting marriages our code, article 80, provides: "Ten years of absence without any news of the absentee, is a sufficient cause for the husband or wife of such absentee to contract another marriage, after having been authorized to do so by

the judge, on due proof that such absentee, without any news, had continued the time required as aforesaid."

From that text we are authorized to conclude, that in a question involving the validity of a marriage of either the husband or the wife of an absentee, an absence of four years is of itself insufficient to create the legal presumption of the death of the absentee, or to create a presumption in favor of the *prima facie* validity of a marriage contracted by the husband or the wife of such absentee.

That presumption could flow only from proof of an absence of ten years, or from circumstantial evidence of the death of the absentee, and from a compliance with the positive provisions of the code.

Our conclusion is clear that under the issue raised by defendant's exception, the burden of proof is on plaintiff to establish the legality and validity of her marriage with him.

## II.

These considerations easily foreshadow our opinion on her second proposition.

Her counsel contend that the rules of law as contained in our code, on the subject of presumption of death from prolonged absence, are not inflexible, and that courts are authorized to consider any other circumstances which may lead to the same conclusion.

They rely very strenuously on the *dicta* of this Court in the cases of Boyd vs. New England Life Insurance Company, 34 Ann. 848, and of Jamison vs. Smith, 35 Ann. 609. Two very important principles, embodying very wise rules of construction, are reaffirmed in these two opinions, and they have been our mainstay and particular guide in our analysis of the questions involved in the case in hand.

In both cases we reiterated after our predecessors the following language: "It is essentially within the province of the judge to draw the line of distinction, by the exercise of a sound discretion, founded on the facts of each particular case."

And in addition to this, we said in Boyd's case: "But death like all other facts, may be established by circumstantial evidence, when, from the nature of the case, direct evidence is not accessible."

"Absence, without being heard of, though not of sufficient duration to create a legal presumption of death, may yet be one of other and supporting circumstances, which, taken together, would satify the mind and conscience of the judge or jury that the party was dead."   *   *

"This disappearance under circumstances of shipwreck, or earthquake, or battle, or explosion, or like perils, might well produce such conviction."

Reasoning within the scope of these rules, we found legal presumption of the death of Boyd, in the circumstances which showed that he was last seen on a vessel at sea, in rough weather, while he was very sea-sick, by his room mate who, in the night saw him leave the room to go out on the guards of the vessel, whence he never returned, and after which he never was seen, although diligent search and inquiry was made for him on the vessel after she had reached shore; and that he was not seen leaving the vessel with all the other passengers, although a close lookout was kept for him.

In Smith's case we found that he had joined one of the armies in the late war between the States, and had gone on the battlefield—whence he never returned; that he had never returned to this city where he had left his mother and all his relatives and where he owned valuable property and other rights, from all of which we felt justified, many years after his disappearance, to conclude that he was dead.

From the record in this case we find that Anthony was an insignificant, obscure man, with few acquaintances, or friends and no relatives in this city, where he lived for five years after the voluntary separation between him and his wife, for whom he had no fondness, or had formed no attachment; that he was homeless and childless after the year 1853; that he had disappeared from this city and from his usual haunts from 1856 to 1861; that he then reappeared and had been seen by his brother-in-law, who had given him some little money. It is not even pretended that he took any part in the disastrous war which was then raging, but it appears on the contrary that he was leading the unexposed life of a plantation laborer in an adjoining parish, where it is said that he had died. But the record fails to show the slightest effort on the part of his wife, her brother, relatives and friends to test the rumor by inquiries, which would have been very easily made, and which were of such vital importance to her in her project of receiving a second nuptial benediction joining her fate to that of another man. No pretence has ever been made that he had ever left the State, hence we cannot declare that he was even an absentee within the legal sense of the term, and much less can we conclude that his absence from this city from 1861 to 1865, justifies the presumption of his death, more than did his previous and longer absence, from 1856 to 1861.

We note the argument of plaintiff's counsel touching the disastrous results of a judicial declaration of the nullity of her marriage with the defendant on the ground of her pre-existing and undissolved marriage with another man not proven to have been dead when she sought to contract a second marriage.

We have also considered their construction that such a conclusion would be tantamount to a conviction of bigamy.

Under the issue as we understand it from the pleadings, we are not concerned with that question, and we have to deal merely with the alleged nullity of the pretended marriage with the defendant.

We find in our code, article 93, the following provision, clearly prohibitory in its character:

"Persons legally married are, until a dissolution of marriage, incapable of contracting another, under the penalties established by the laws of this State." One of those penalties is the absolute nullity of the marriage between persons, when one or both are not able to contract, and this nullity we must apply in all cases which fall within the scope of the prohibition.

This nullity is invoked by the defendant in a manner and under a mode which are sanctioned by jurisprudence. 15 Ann. 342, Succession of J. M. Minvielle; 15 Ann. 519, Summerlin vs. Livingston.

From our investigation of the facts we find that, both in 1859 and 1865, plaintiff was not able to contract a legal marriage with the defendant, on the ground of her pre-existing and undissolved marriage with Christopher Anthony, whose death cannot be presumed to have occurred at any time previous to the year 1865.

We conclude from the record that the intention of the parties to this suit in going through the ceremony of a nuptial benediction in 1865 was to legalize or attempt to ratify the marriage of 1859, which had been literally destroyed by the reappearance of Anthony in 1861. But the law does not recognize or even sanction the ratification of an absolutely null contract. Therefore no legal matrimonial effects could or did result from the marriage of 1865, which is the very contract declared upon by plaintiff.

These considerations lead us to a conclusion entirely different from the views taken of the case by our learned brother of the district bench, hence we must hold that his judgment is erroneous.

It is therefore ordered, adjudged and decreed that the judgment appealed from be annulled, avoided and reversed, and it is now ordered that defendant's exception be maintained, and that plaintiff's action be dismissed at her costs in both courts.