### No. 10,266.

### SUCCESSION OF ROMAIN BUISSIERE, ON PETITION OF JOSEPHINE PERRAUD ET AL., TO ANNUL THE WILL, ETC.

However true it be that, what is done in contravention of a prohibitory law is null and is barren of effect, the law creates an exception, in cases of marriages contracted in good faith, in favor of both spouses, or of one of them and of the issue born of such marriages.

An error of *law*, as well as an error of *fact*, may be pleaded and established to prove such good faith and may secure protection.

Although a marriage between uncle and niece may have been a nullity, as contracted in violation of a prohibitory law, yet it will produce legal effects, as to one of the spouses and the issue of the marriage, when such spouse acted in good faith.

Testamentary dispositions by which the testator bequeaths the usufruct of part of his property to one person, wishing it to continue in others after the death of such person, and gives the naked ownership of such part and the full ownership of the remainder of his estate to another, do not constitute a case in which the legatees are charged to preserve for, or to return a thing to, a third person, and do not contain a prohibited substitution and *fidei commissum.*

A PPEAL from the Civil District Court for the Parish of Orleans. *King,* J.

---

*F. D. Chrétien, F. L. Richardson* and *Joseph Lombard* for Plaintiffs and Appellees:

Among collateral relations marriage is prohibited between uncle and niece. C. C. Art. 95; C. N. 161 to 162; 34 Ann. 270; 15 Ann. 342, 441.

Art. 118 of the Civil Code has no application, when the good faith is claimed to flow from an error of law. *Ignorantia juris. neminem excusat.* C. C. Aarts. 1112 and 1488, 1840; Favard, Vol. 3, p. —; Dalvincourt. professor of the law faculty of Paris, Chap. III. p. 75, and note — p. 114; Arret de la cour de Colmar du 14 juin 1838; Marcadé, Vol. I, p. 522, No. II, § 693, Vol. 1, p. 524, § 694; D'Aguessau, Vol. IV, p. 280; Delvincourt, Cours de Code Civil, p. 144 under title of page 75, No. 2.

When the uncle and niece have been told of the prohibition of the law to a marriage between them in this State, and they leave the State and get married in an adjoining State where the same prohibition exists, and immediately return to their State, they acted in fraud of the law of their domicile, and cannot claim the benefits of Art. 118 of the Code, under the plea of ignorance of the law. Such a marriage is null in both States. 4 Ann. 375; 12 Ann. 367.

A donation made in view of a future marriage is null if the marriage never takes place or is declared null. C. C. Art. 2336, 1559, 1565, 1740; 15 Anna 505; C. N. 932; C. C. Art. 1481; 10 R. 143; 2 Ann. 956.

The issue of a marriage between uncle and niece being an incestuous bastard, under the law cannot inherit from them. C. C. 920; C. N. 762: 18 Ann. 590. Bastard, adulterous or incestuous children, who are prohibited by law from inheriting anything more than mere alimony, cannot take property as legatees. Where children are prohibited by law from receiving property as heirs, they cannot receive as legatees by last will. C. C 1488, 920; 18 Ann. 590.

*G. A. Breaux, A. L. Tissot* and *James Legendre,* contra :

1. Where the marriage was contracted, according to the forms of law, the presumption is in favor of the good faith of the parties. Gaines vs. New Orleans, 6 Wallace, 642; McCaffrey vs. Benson, 40 Ann. 14; Maynier vs. Bounet et al., Dalloz Jur: Gén. 1871, Verbo Mariage, 5. p. 260; Dalloz Code Annoté, vol. 1. p. 172.

2. Good faith required by Articles 117. 118, may result from an error of law as well as of fact. Journal du Palais. vol. 1 of 1838, pp. 77, 78; Demolombe. vol. 3, p. 543—4 Ed. A. Dunand. 1846: Acollas, Manuel de Droit Civil, vol. 1, p. 199; R. C. C. 117; C. N. 201, 202; Ernoof vs. Schuchart, Journal du Palais, vol. 1, p. 78 (1858); Preitramenta vs. Moreau, Dalloz Jur. Gén. Deuxième partie, p. 80 (1849); Delorme vs. Dame Brunet, Dalloz Jur. Gén. 2me partie, p. 218 (1854); Gauduis vs. Pierre Gaudet, Dalloz, Jut. Gén. 2me partie,

pp. 73-4 (1860); Affair Lebon, Dalloz. Jur. Gén. 2me partie, p. 129 (1880); Dec. vs. Lav. C. P., Dalloz Jur. Gen. 2me partie, p. 189 (1881); Meynier vs. Bonnet, above quoted.

3. Where a marriage has been celebrated according to the requirements of the law, it cannot be treated as having never existed; it has legal existence with all its consequences until dissolved by the action in nullity, provided by the law. Acollas, pp. 181, 198, 199; Demolombe, vol. 3, pp. 529, 530.

4. Where death has ended the relations assailed. and there is no longer any question but the interest of the survivor or of the children, courts will more readily validate marriages. Toullier. vol. 1, pp. 35, 608, Ed. Cotillon, Paris.

5. Collaterals, in this matter derive all their rights from the deceased; ,and occupy no better position than he does; he could not be heard to allege his own violation of the law, to strip his victim and child of the beneficence he has conferred, to enrich himself. Edwards vs. Edwards, 25 Ann. 201; Kerwin vs. Ins. Co., 35 Ann. 35.

6. The will in favor of the wife is valid: It is remunerative in terms. It is in favor of one who has acted in good faith. It is not in favor of a concubine; Article 1481 C. C. having no relation to the instant case.

7. Donations in view of marriage, fall when the marriage does not take place. C. C. 1750. Here the marriage did take place; it existed in law and in fact, and must continue to so exist until dissolved, if ever, by suit; the institution of the action provided, attests its existence.

The opinion of the Court was delivered by

BERMUDEZ, C. J.  Romain Buissière, a Frenchman, died in 1887, leaving a will by which he bequeathed the usufruct of part of his estate to his wife and instituted their daughter his universal legatee.

He left three sisters and a brother. Two of the former, joined by the latter, bring this action to annul the will of the deceased, on the ground of the nullity of his marriage and the consequent illegitimacy of its offspring, and also, because the will contains a prohibited substitution and *fidei commissum*.

## II.

The marriage is charged with nullity, as having been contracted between uncle and niece, in violation of the prohibitory law of both the place of their domicile and that of the celebration.

The surviving wife, individually and as tutrix, is made defendant, and the sister, who did not join, is made a party.

The wife contends that her marriage was contracted in good faith, stating the circumstances under which it took place, and that it must produce its civil effects in her favor and in that of her child. The sister admits the vality of the marriage and of the will.

From a judgment in favor of plaintiffs this appeal is taken.

The record discloses the following facts :

Romain Buissière was a Frenchman. His sister and her husband, Moungournet, and their daughter, Lucie Adèle, were French citizens.

Romain Buissière settled years ago in Louisiana, and, in 1887, returning home from a trip to France, brought over with him his niece, Lucie Adèle, and, on his arrival here, placed her in a convent, to receive a suitable education. After she had left the institution, he conceived the idea of marrying her. The father and mother of the girl, who were in France, were written to, and arrived here to consider and determine the matter. The question to be solved was a grave one : The marriage of an uncle and a niece. So much so, that before leaving, the opinion of a French lawyer had been obtained, which was, that such marriage could be legalized in France.

After their arrival here, the question was submitted for legal advice, and after it was given, Romain Buissière and Lucie Adèle Mougournet, who was then a minor, left the State and went to Bay St. Louis, Mississippi, where they were the objects of the ceremonies of marriage, in December, 1882. They subsequently returned home, lived publicly and avowedly as husband and wife, had two children, one of whom died, the other surviving the father.

Under the circumstances, it is urged that, as the marriage of an uncle with his niece was prohibited, as well in Louisiana, as in Mississippi, at the date of the celebration, and as the parties knew, constructively and actually of such prohibition, the marriage which was solemnized between them, was contracted in bad faith and must be declared barren of all effect.

It is further urged that, whether they knew or not of the prohibition, the marriage is a nullity, because they cannot be permitted to plead ignorance of the law and that what is done in violation of a prohibitory law, is null and produces no legal effect, as parties are not allowed, by their conventions, to derogate from the same.

This is no doubt the general rule of law which underlies all well ordained civil governments, as a matter of necessity, for the preservation of public order and good morals ; but the rule is not so emphatic and peremtory that exceptions may not exist which do not fall within its ban.

Surely, the law making power had the right to make exceptions, and it has done so, in cases of marriages, which, however made in derogation of prohibitions, are neverteless permitted to produce civil effects, *when contracted in good faith,* as well as in favor of the spouses, or of one of them, as of the issue of the marriage.

On the question : Whether the defence of the *ignorance of the law* can be raised and admitted, in the present controversy, much has been ably said and written by the learned counsel representing the litigants ;

but it would serve no useful purpose to enter into a discussion of the relative merits of the contention.

The matter, long mooted, has been thoroughly considered and may now be deemed as finally set at rest, as well by commentators, as by courts of justice.

In France, from which our legislation mostly derives, the plea has been allowed and sustained, whenever the circumstances warranted.

Article 291 of the Napoleon Code, declares, that the marriage, which has been declared null, produces nevertheless civil effects, as well, as concerns the spouses, as the children, when contracted in good faith.

Article 202 of the same Code, provides further, that, if good faith exists only on the part of one of the spouses, the marriage will produce civil effects, in favor only of that spouse and of the children born of such marriage.

Articles 117 and 118 of our Revised Code, have the same import and are substantial, if not identically, the same.

From the views expressed in France by distinguished commentators, as well as from the opinions there announced in some ten case, it appears that it is now a recognized and established privilege, that good faith may result, as well from an error of *law*, as from an error of *fact*, and that the parties, contracting marriage, under circumstances from which such errors arise, are entitled to the relief allowed by law. Marcadé on Art. 204; Duvergier Toullier 1, No. 651, note a; Demolombe 3, 357, 543, *et seq.*; Aubry & Rau 5, p. 46, § 460; Zachariæ 1, 125; Laurent 2, n. 504; Accollas 1, pp. 109, 181; Paris 9 Mess an XIII, pp. 38, 1, 77; 18 Dec. 1837; 1938 p. 1, 78; Limoges 25 Aout 1841, p. 54, 1. 315; 5 Jan. 1842, also 1840; Aix, 11 Mars 1858, p. 58, 1082, 1860, 1871, 1880, and authorities in defendants' brief.

There is no reason why this humane exposition of the law should be questioned, and still less, why we should run counter it.

We therefore adhere to it and hold that the principle ought to be applied to the instant case, and, therefore that, if circumstances exist which were susceptible of inducing the belief in the wife, that her marriage with her uncle, could be valid, her good faith must protect her and her innocent offspring.

It is important to bear in mind, that Romain Buissière and Lucie Adele Mongournet were French citizens, and that as such, they had some knowledge of the laws of their country on the subject of marriages between uncle and niece.

The law of France (Art. 103, N. C.), in this respect, is like our, prohibitory; but the following Article, 164, which is not found in our Code,

declares that, nevertheless, it is allowed to the Emperor (President of the Republic) to raise, for grave reasons, prohibitions announced against marriages between the uncle and the niece, the aunt and the nephew.

The evidence in this case shows that Romain Buissière consulted a veteran lawyer who once occupied an important position on the Bench, touching the validity of his contemplated marriage with his niece, and that he was informed that although in Louisiana the marriage was forbidden, it would be valid in certain States; that Buissière approached another attorney, once a justice of the peace, and at the time a clerk of court, and also a notary public, who drew up the contract which was afterward signed.

Strenuous efforts were made to show that Miss Mougournet, who was a minor at the time, accompanied him in every instance, and that she must have overheard the views expressed to Buissière on the subject; but, whatever the testimony be in this regard, it has not, contradicted as it is by her own sworn declarations, left in our minds the impression that she acquired, in consequence, the knowledge that in Louisiana the prohibition was absolute. So that, it can be well inferred that while she may have known and even knew of the existence of the prohibition, she remained under the honest conviction that in France power was lodged somewhere to raise the impediment, or that it could be removed in some manner, and had been done away with.

To all appearances, when she left with Buissière for Bay St. Louis, she did so under the belief that Mississippi was one of the States in which, as the counsellor had said, a marriage between uncle and niece could be legally contracted, and that such marriage could be, as had been stated by the French Lawyer, legalized in France.

In a case like the instant one, in which it appears that a young girl, still a minor, brought over from her native land by her uncle, assisted by the advice and presence of her father and mother, who had crossed the ocean for the purpose of attending her marriage, pressed by that uncle for her hand, which she, in good faith, consented to give him, was married, occupied and enjoyed publicly during his life, the *status* of his legitimate wife, becoming the mother of two children,—a case in which, after all this had occurred, the uncle dies, in somewhat relatively independent circumstances, leaving a will in favor of his wife and child and excluding the plaintiffs, as much as he could have done without naming them from any participation in his estate, we think with Toullier, that the *status* of both the widowed mother and the orphan daughter, such as was made by the departed husband and father, ought not to be disturbed and that they should reap all the civil effects which a marriage,

however questionable its validity may have been, secures to one of the spouses and to the issue, when contracted in good faith. Vol. 1, p. 304, par. 608.

We must not be understood as holding that the marriage was valid, for surely it was one which could have been annulled, as contravening a prohibitory law.

What we decide is simply that however much it could have been annulled, it is one of those marriages which though null, produces nevertheless civil effects because contracted in good faith, although that good faith may lack of legal foundation.

## II.

We think that the charge that the will contains a prohibited substitution and *fidei commissum*, is not tenable, for the reason that it does not appear that the legatee of the usufruct and the universal legatee were charged to preserve for or to return a thing to a third person. R. C. C. 1520, 1522.

The legacy of the usufruct to the wife is, as to its *quantum*, graduated by circumstances to extend over one-half, or one-fourth, of the testator's property, and the universal legacy covered the entire remaining property, absolute ownership and enjoyment of one-half and the naked ownership of the other half, susceptible of increase by enjoyment of half thereof or one-fourth of the whole, in certain contingencies, unnecessary to mention.

The fact that the testator has expressed the desire that after the death of his wife certain nephews and nieces of his, or their descendants, should enjoy the like usufruct is of no moment. If unwarranted by law, it must simply be reputed as unwritten (R. C. C. 1519), and in any event, it does not impair the validity of the disposition of usufruct in favor of the widow. 31 Ann. 456.

The views above expressed relieve us from the necessity of passing on the plea of estoppel set up by the minor and tutrix and on other matters urged by the plaintiffs which constitute none but corrolaries to their fundamental propositions.

We, therefore, conclude that the widow and child are entitled to the relief sought by them.

It is, therefore, ordered and adjudged that the judgment of the lower court be reversed, and it is now ordered and decreed that there be judgment in favor of the defendants, rejecting plaintiffs' demand with costs in both courts.

### CONCURRING OPINION.

FENNER, J. I accept the conclusion announced in the French jurisprudence and not contradicted by any contrary adjudication in this State that the good faith which gives civil effects to marriages otherwise null, may, in certain cases, arise from error of law as well as from error of fact.

In such case, however, the error of law must possess two qualities :

1. It must be actual.

2. It must be excusable.

Great caution and strictness should be exercised in admitting such pretensions.

Yet, in the language of Toullier, the question of good faith *vel non*, in such a case, " presents always a question of fact, for the solution of which the judge must consider the particular circumstances of each case and especially the condition of the spouses."

In appreciating the facts of this case the majority of the court concludes that the wife was actually ignorant of the law and that her ignorance was excusable. I do not find that the learned judge *a quo* announced a different conclusion on the facts. His opinion was based exclusively on the principle that error of law cannot be the basis of good faith.

While the evidence is not altogether satisfactory to my mind, yet, considering the finding of my brethren ; the minority and sex of the party ; her ignorance of the English language ; her nativity in France where such marriages may be legalized ; her recent arrival in this country ; her seclusion in a convent ; her subordination to the man who married her who was greatly her senior, and to whose charge and protection she had been confided ; the approval, advice and participation given by her parents to the marriage ; and the fact that the marriage no longer exists and no public interests are involved conflicting with those of the mother and her innocent offspring, I find strong circumstances going to make the case peculiar and exceptional and robbing it of serious danger as a precedent.

I feel, therefore, that I can concur without opening the door for the ready admission of such defenses and with the full warning that I shall not recognize them in future cases except when attended by such peculiar circumstances or others equally strong.