On Rehearing.
 

 LAND, Justice.
 

 On the original hearing, the plea of res adjudicata was sustained in this case for the reason that: “The parties to the former suit and the object of the demand were the same as in this suit and the cause of action is substantially the same. The only difference in the allegations made in the two suits is that in the former plaintiff alleged that she was the issue of a ‘common law marriage’ contracted in the State of Mississippi and in this suit she alleges that she is the issue of a ‘putative marriage.’ ”
 

 Plaintiff alleged in the first suit, Succession of Ulisse Marinoni, Jr., 177 La. 592, 148 So. 888: “That according to the laws of the State of Mississippi
 
 a valid, legal marriage
 
 can be contracted by the mere consent of the parties, coupled with the fact that the parties assume the burdens of matrimony and hold themselves out to the world as mán and wife, and live to
 
 *785
 
 gether as such with the intent to be man and wife, which your petitioner avers her father, Ulysses Marinoni, Jr., and her mother, Josephine Bartoletti, did as aforesaid.
 

 “Petitioner avers that the sole and only issue of said marriage relationship is your petitioner, Rita Marinoni, who was born in the City of New Orleans on the 13th day of January, 1902, and is therefore
 
 a forced heir
 
 of your decedent. Petitioner avers that she is
 
 the only lawful child
 
 of petititioner and that petitioner never had any other children.
 

 “That your petitioner alleges that her father, Ulysses Marinoni, Jr., died in the City of New Orleans on the 12th day of September 1931, leaving a will in the'olographic form by which- he makes various and sundry legacies,
 
 recognizes Adina Provosty as his surviving wife, although your petitioner’s mother was deceased’s legal wife, and living,
 
 ignoring petitioner’s legal rights
 
 as his sole heir, being the legitimate child of his marriage with her said mother.
 
 That said statement contained in said will to the effect that deceased never had any children are (is) in error and untrue.” Articles V, VI, and VII of petition. (Italics ours.)
 

 Plaintiff prayed that:
 
 "Adina Provosty Marinoni, individually,
 
 as she is declared to be in the Succession proceedings of Ulysses Marinoni. No. 193-524 of the docket of this Honorable Court,
 
 and W. T. Nolan and the Canal Bank & Trust Company, executors, be duly cited to appear and answer this petition, and, after due proceedings had, that there be judgment in favor of your petitioner and against the said aforesaid, Adina Provosty, individually, and-W. T. Nolan and Canal Bank & Trust Company Testamentary Executors,
 
 declaring said last will and testament of decedent herein to be void and of no effect
 
 insofar as it purports to recognize Adina Provosty as decedent’s wife and widow in community, and insofar as it fails to recognize your petitioner as sole ttnd only legal heir at law of decedent, and impinges your petitioner’s legitime,
 
 and for further judgment decreeing
 
 your petitioner as sole and only legitimate heir at law of decedent, and as-such is entitled to one-third of decedent’s estate,
 
 or such larger amount as deceased has not disposed of by particular legacy.” (Italics ours.)
 

 The prayer of plaintiff, in this, the second suit, is that:
 
 “The Executors of the within estate, William T. Nolan, the Canal Bank and Trust Co., and Mrs. William T. Nolan, Universal Legatee
 
 of said within estate be duly cited to appear and answer this petition, and that after all due and legal proceedings had, the provisions of the last will of deceased, disposing of petitioner’s legitime, be annulled and that petitioner be declared entitled to inherit one-third of her father’s estate,
 
 as the issue of a putative marriage contracted by her mother in good faith and in the full belief that she was legally married to Ulisse Marinoni, Jr., at the time of petitioner’s conception,
 
 and be sent into possession of same and for general relief.” (Italics ours.)
 

 It is to be observed that the prayer of plaintiff, in the first suit, is for judg
 
 *787
 
 ment
 
 “against Adina Provosty individually”
 
 and against the executors, declaring the last will and testament of decedent void and of no effect, in so far as it purports
 
 “to recognize Adina Provosty as decedent’s wife and widow in community, and insofar as it fails to recognize plaintiff as sole and only legal heir at law of decedent.”
 
 (Italics ours.)
 

 Mrs. Adina Provosty is not a party, either individually or as decedent’s wife, to the present suit, in which plaintiff prays to have the will annulled, only to the extent of declaring her entitled to inherit one-third of decedent’s estate, “as the issue of a putative marriage.”
 

 Mrs. William T. Nolan, universal legatee under decedent’s will, is a party to the present suit, but is not a party to the first suit.
 

 It is plain, therefore, that the parties to the first and to the present suit are not the same in quality.
 

 The thing demanded is not the same in the second suit as in the first, as is clearly shown by the prayer for judgment in each suit.
 

 As declared in article 2286 of the Civil Code: “The authority of the thing adjudged takes place
 
 only
 
 with respect to what was the object of the judgment. The thing demanded
 
 must be the same; the demand must be founded on the same cause of action;
 
 the demand must be
 
 between the same parties,
 
 and formed by them against each other in
 
 the same quality.”
 
 (Italics ours.)
 

 Nor, in our opinion, is the thing demanded founded upon
 
 the same cause of action.
 

 It reqúires no great argument to prove that one claiming rights under a putative marriage is invoking a different cause of action than one who claims rights under a legal marriage. The difference was expressly recognized in McCaffrey v. Benson, 40 La.Ann. 10, 13, 3 So. 393.
 

 In the year 1886, Mrs. McCaffrey married the defendant, Benson. At the time, her husband had left her and had disappeared, and, after several years, was reported dead, but reappeared after her marriage to Benson.
 

 Plaintiff sued Benson for a separation from bed and board and for one-half of the property belonging to the community existing between her alleged husband and herself. Defendant first pleaded the general denial, and subsequently urged by way of peremptory exception that there was no legal marriage between him and plaintiff, for the reason that when he agreed to marry her, she was, by previous legal marriage, the wife of another man then living, and from whom she had never been legally separated. He prayed for judgment recognizing the nullity of his marriage with plaintiff. Judgment was rendered overruling his exception, and granting to plaintiff all the relief she prayed for.
 

 On appeal to the Supreme Court, the marriage was decreed null and the exception maintained. McCaffrey v. Benson, 38 La.Ann. 198.
 

 In the year 1888, Mrs. McCaffrey brought a second suit against Benson, al
 
 *789
 
 leging that the marriage between defendant and herself was contracted in good faith, and that one of the civil effects which it produced was a community of acquets and gains of which she became joint owner with defendant, in equal portions, of all the property acquired by him during the term of their cohabitation.
 

 The defendant, Benson, pleaded res adjudicata to plaintiff’s demand,. predicated upon the judgment obtained by him decreeing the marriage a nullity. The plea was overruled and judgment rendered for plaintiff.
 

 On appeal, this court said in McCaffrey v. Benson, 40 La.Ann. 10, 13, 3 So. 393, 394: “As in that case [McCaffrey v. Benson, 38 La.Ann. 198] plaintiff’s demand was for a separation from bed and board, and for one-half of the property belonging to the community existing between her alleged husband and herself, and as her entire demand was rejected by our judgment, defendant argues that the said judgment is a complete bar to plaintiff’s present action, which sets up the same demand, for the same cause of action, between the same parties, in the same capacity. Two of the essential requisites to the plea are to be found in the case;
 
 but the third is •wanting, hence the exception is not good.
 

 “In the previous suit the claim for the community was grounded on
 
 an alleged lawful marriage,
 
 and in the present action the community rights sought to be enforced spring,
 
 as alleged civil effects,
 
 from a marriage which has been declared
 
 null, but which had been contracted in good faith.
 
 It is therefore clear that
 
 the cause of action is not identical in the two suits, and that the district judge did not err in overruling the plea.”
 
 (Italics ours.)
 

 Likewise, the claims of plaintiff, Rita Marinoni, in the first suit were based upon
 
 an alleged valid, legal, common law marriage
 
 of her mother in the State of Mississippi. And in the present suit, they spring
 
 “as alleged civil effects"
 
 from a marriage alleged to have ¿seen contracted
 
 in good faith,
 
 a “putative marriage.” C.C., arts. 117, 118.
 

 The cause of action is not the same in the two suits.
 

 The first suit is based solely and exclusively upon an alleged
 
 “valid, legal common law marriage"
 
 of plaintiff’s mother in the state of Mississippi. There is not a single allegation in the petition in that case as to a marriage contracted in good faith, or a “putative marriage.”
 

 It is stated in the original opinion in the present case, however, that: “The rule is that where one claims a certain thing or seeks recognition of certain rights, he must assert all his pretensions, all his titles, in one suit. A plea of res adjudicata based on a former judgment between the parties on the same subject matter bars a second suit for the same purpose not only as to the titles specifically set up in the former suit, but as to those which might have been plead as well. A plaintiff can not withhold grounds for relief which he should have asserted and then, when he loses, file another suit setting forth the facts originally alleged and those withheld. Brooks v. Magee, 126 La. 388, 52 So. 551; Rareshide
 
 *791
 
 v. Enterprise Ginning & Mfg. Co., 43 La. Ann. 820, 9 So. 642.”
 

 The doctrine above announced is too broadly stated, and is not in harmony with the latest decisions of this court on this point.
 

 In Tennent v. Caffery, 163 La. 976, 990, 113 So. 167, 172, this court said: “‘The doctrine of the common-law courts that res judicata includes not only everything pleaded in a cause, but even that which might have been pleaded, does not obtain
 
 generally
 
 under our system,’ ” citing Woodcock v. Baldwin, 110 La. 270, 275, 34 So. 440, 441. (Italics ours.)
 

 In a still later case, State v. City of New Orleans, 169 La. 365, 374, 125 So. 273, 276, the court said: “The law governing res judicata in this state is established by article 2286 of the Civil Code, which reads as follows: ‘The authority of the thing adjudged takes place only with respect to what was the object of the judgment. The thing demanded must be the same; * * * the demand must be between the same parties, and formed by them against each other in the same quality.’
 
 In this state the doctrine of res judicata is much more restricted than it is in common-law states.
 
 Woodcock v. Baldwin, 110 La. [270] 275 34 So. 440; State v. American Sugar Refining Co., 108 La. 603, 32 So. 965. Here, the object of the two suits is not the same.” (Italics'ours.)
 

 Article 2286 of the Civil Code also specifically declares that “the demand must be founded
 
 on the same cause of action”;
 
 and the cause of action is not the same in the two suits. The plea of res adjudicata is therefore overruled.
 

 Defendants filed a plea of res adjudicata and also an exception of no cause of action in the present suit. The latter exception remains to be disposed of in this-case. For the purpose of trying an exception of no cause of action, the well-pleaded facts set forth in the petition are accepted as true.
 

 The main pertinent facts of the -case, stated in narrative form, are as follows:
 

 Josephine Bartoletti, the mother of plaintiff, Rita Marinoni, wife of John Lewis, was born and reared in Rome. From her birth to the present time she has borne a good reputation. She was only thirteen years old when she came to this country, and, when seventeen years old, she was courted by plaintiff’s father, the late Ulisse Marinoni, Jr., who became engaged to marry her. Petition, art. 1.
 

 Ulisse Marinoni, Jr., stated to plaintiff’s mother that the only reason he did not wish their marriage to take place in the city of New Orleans was that his father was then in a dying condition from diabetes, and that the marriage of his only son to an utter stranger might hasten his death. Petition, art. 2.
 

 Ulisse Marinoni, Jr., then requested plaintiff’s mother, Josephine Bartoletti, to go to Gulfport, Miss., for the purpose of being married there. Petition, art. 3.
 

 On August 23, 1900, plaintiff’s mother and father went to Gulfport, Miss., the former being chaperoned by one. of her
 
 *793
 
 lady friends, who occupied the same room with her at Gulfport until after the afternoon of August 25, 1900. Petition, art. 4.
 

 The parties agreed that no marriage should take place on August 24th, as Friday was an unlucky day to get married.
 

 Josephine Bartoletti and her chaperone and Ulisse Marinoni, Jr., drove together to the courthouse of the circuit court of Harrison county, Miss., where Marinoni, Jr., in the presence of plaintiff’s mother and her chaperone, Mrs. Victor Pelarogne, went into the office of F. S. Hewes, circuit court clerk of Harrison county, Miss., who had the power, jurisdiction, and authority to take affidavits and to issue marriage licenses, and Ulisse Marinoni, Jr., made two affidavits before the circuit court clerk, photostatic copies of which are annexed to and made part of plaintiff’s petition. Petition, art. 5.
 

 The petition contains no article 6.
 

 One of the affidavits declaring that plaintiff’s mother had reached the age of eighteen years was false and untrue to the knowledge of Ulisse Marinoni, Jr. Petition, art.
 
 7.
 

 Upon these affidavits, one of which was false and the other true, Ulisse Marinoni, Jr., obtained from the clerk of court a license authorizing him to marry plaintiff’s mother, Josephine Bartoletti. Petition, art. 8.
 

 Plaintiff’s mother was
 
 "then an orphan and a minor, unable to read English at all, and who understood very little of the English language, and nothing of the laws and customs of this country.”
 
 Petition, art. 9. (Italics ours.)
 

 Ulisse Marinoni, Jr., imposing on the love and affection that plaintiff’s mother had for him,
 
 "and on her ignorance of the laws and customs of this country,
 
 then and there told her that
 
 this was all that zvas necessary to constitute a valid marriage between them, and they would have the marriage blessed by a priest later.”
 
 Petition, art. 10.
 

 Plaintiff’s mother, an innocent girl, was then and there deceived by the statement of plaintiff’s father, Ulisse Marinoni, Jr., and was thereby, during the latter part of the evening of August 25, 1900, induced to enter into the marriage relation with Ulisse Marinoni, Jr., and to cohabit with him at a hotel at Gulfport, Miss., and subsequently at Biloxi, and subsequently in New Orleans
 
 as man and wife. "Petitioner’s mother
 
 * * *
 
 believing that she was the true and actual wife of the said Ulisse Marinoni, Jr., up to the month of December 1901,”
 
 when Marinoni declared to her for the first -time that he was not actually and truly married to her. Petition, art. 11. (Italics ours in quotations from petitions, arts. 10 and 11.)
 

 Plaintiff was conceived in the city of New Orleans from the intercourse between her parents
 
 "and at that time when her mother believed in good faith that she was the true and lawful wife of the said Ulisse Marinoni, Jr.”
 
 Petition, art. 12.
 

 Ulisse Marinoni, Jr., contributed, during plaintiff’s minority, considerable sums of money for her care and education, and she
 
 *795
 
 frequently visited her father at his office during his lifetime. Petition, art. 21.
 

 According to the affidavits made by Ulisse Marinoni, Jr., at the time he obtained the marriage license, he was over 21 years of age and there was no legal impediment to the marriage. He did not marry his present wife until December 23, 1901.
 

 Plaintiff does not pretend, on the above state of facts, that her mother was actually married to Ulisse Marinoni, Jr., and became his lawful wife. But plaintiff does contend that
 
 the circumstances were such
 
 as to make her mother
 
 honestly believe,
 
 before she had sexual intercourse with her father, which ultimately resulted in plaintiff’s conception and birth, that she then was actually his true wife and that the marriage, at all events, was a “putative marriage,” from which the legitimacy of plaintiff sprung “as a civil effect,” under article 118 of the Civil Code of this state.
 

 Exceptors’ argument that no ceremonial marriage was performed is beside the question. As no disability attached to either, a ceremonial marriage would inevitably have made them
 
 legally
 
 man and wife. The vital question in the case is: Did she believe, honestly and reasonably, from all that had been said and done, that she was actually married to Ulisse Marinoni, Jr.?
 

 A putative marriage is not founded on the
 
 actual marriage
 
 or the
 
 ceremonial marriage,
 
 but on the
 
 reasonable belief
 
 by one or both of the parties that they were
 
 honestly
 
 married and that their offspring came from a lawful and honorable union.
 

 The facts alleged, when taken as true, are indisputable that Ulisse Marinoni, Jr., courted plaintiff’s mother; became engaged to marry her; took her and her chaperone to the courthouse of the circuit court of Harrison county, Miss., to be married; made the necessary affidavits before the clerk of the court, a public officer, to obtain the marriage license; secured the samé in the presence of plaintiff’s mother and chaperone; and informed plaintiff,
 
 who was unable to read English at all and who understood very little English, and who knew nothing of the laws or customs of the country, that these formalities were all that
 
 were necessary to constitute
 
 a valid marriage
 
 between them; and that they would have
 
 the marriage blessed by a priest.
 

 The fact that Ulisse Marinoni, Jr., was also of Italian descent, the fact that he was a distinguished member of the bar, and the fact that both were Roman Catholics, whose religion required the blessing of their union by the priest, without doubt satisfied and convinced the mother of plaintiff, a foreign-born woman of foreign tongue, and ignorant of - the customs and laws of this country, that all the formalities of a civil marriage ceremony had been complied with and that her marriage to Ulisse Marinoni, Jr., was legal and valid.
 

 The bad faith of Ulisse Marinoni, Jr., is unimportant, since it cannot be well, doubted that plaintiff’s mother acted in good faith, and honestly believed, at the
 
 *797
 
 time, and when her child was conceived, that she was the lawful wife of Ulisse Marinoni, Jr.
 

 Article 118 of the Civil Code specifically provides that: “If only
 
 one
 
 of the parties acted
 
 in good faith,
 
 the marriage produces
 
 its civil effects
 
 only
 
 in his or her favor
 
 and in favor of
 
 the children
 
 born of the marriage.” (Italics ours.)
 

 Article 117 of the Civil Code provides that: “The marriage, which has been declared null, produces nevertheless
 
 its civil effects
 
 as it relates to the parties and their children, if it has been contracted
 
 in good faith."
 
 (Italics ours.)
 

 Articles 117 and 118 of our Civil Code are literal translations of articles 201 and 202 of the Code Napoleon, and the views of the French commentators on the latter are equally applicable to those in our own Code. McCaffrey v. Benson, 40 La.Ann. 10, 15, 3 So. 393.
 

 In First Planiol, Droit Civil, 3d Ed.:
 

 “No. 1096.
 
 Good faith consists in being ignorant
 
 of the cause which prevents the formation of the marriage
 
 or the defects in its celebration
 
 which caused its nullity.”
 

 “No. 1100. Formerly good faith alone was not sufficient. It was necessary, besides, for the party pleading it to show a
 
 just cause
 
 for having fallen into error.
 

 “No. 1101. Modern jurisprudence does not exact this condition, because the text of the law speaks
 
 only of good faith."
 
 (Italics ours.)
 

 2 Baudry-Lacontinerie et Houges-Fourcade (2d Ed.) Nos. 1898, 1899; 5 Aubry & Rau, vol. 7, 66, text and note 5, are to the same effect.
 

 No minister of religion can celebrate a marriage in France, yet even in that country where the law as to ceremonies required for marriage is far stricter than in Louisiana, a marriage contracted in disregard of such ceremonies is held putative when the parties, or one of them,
 
 had reason to believe same was legal.
 

 We cite the following translation from the edition of the Code Napoleon published in Parish in 1924 and calleá Dalloz’ Small Code:
 

 “The marriage contracted
 
 in good faith
 
 by one of the spouses, being considered
 
 as putative
 
 while it may be considered as
 
 bigamous
 
 on (the part of) one of the spouses, yet produces for the benefit of the children born of the connection the effects of a valid marriage and notably confers on them the right to succeed as the legitimate children, even of a spouse in bad faith.” Dalloz’ Small Code, 5th of January, 1910. (Italics ours.)
 

 “It is the same specially as to a marriage celebrated in the manner of Judaism between two Algerian Israelites when there exists as to this marriage an act in the form of a Katouba passed before a Rabbi in the presence of witnesses according to the forms of the Mosaic Law; when everything indicates that in the contracting of this union
 
 the wife was in good faith; that being quite young when she was married, and having been brought up in the faith of Mosaic customs, being ignorant of the laws and French customs,
 
 
 *799
 
 one can admit that she did not know of the obstacles that would strike her marriage with nullity.” Dalloz’ Small Code, -5th of January, 1910. (Italics ours.)
 

 “Under Article 202 (118 of our Code)
 
 good faith
 
 can exist in case of error of law without one being required' to distinguish as to the error of law
 
 as to the form of the act
 
 or as to the capacity of the parties. (Atty. General Des Jardins, July 30th, 1900).” (Italics ours.)
 

 “In consequence the applicability will not be disregarded on the pretext that it was a marriage which has been celebrated in France before the officer of vital statistics (an officer not authorized to perform the ceremony of marriage.) Dalloz’ Small •Code, July 30th, 1900.
 

 "Good faith
 
 being always presumed it is .incumbent on the party who alleges bad faith to prove it. (Italics ours.)
 

 “In consequence it is not incumbent on the party who claims the civil effects of a
 
 void
 
 marriage by reason of faith of one of the spouses to produce proof of his good faith or to depend on such proof.” Dalloz’ Small Code, November 5, 1913, and note of Pierre Vinet. (Italics ours.)
 

 Marcade, vol. 1, page 520, devotes much space to the proper construction of articles 201 and 202 of the Code Napoleon, which are the same as articles 117 and 118 of our Civil Code.
 

 He takes the position that these articles .apply to marriages absolutely null, ab initio, because not celebrated before a proper ■officer or not with the forms prescribed by law. He quotes the debates on the articles by Napoleon and the framers of the Code Napoleon.
 

 He says page 521 (translated):
 

 “Otherwise what is definitive of the scope or rule of the two articles. It is a disposition of humanity, of pity for the unfortunate, of excuse for error, or, why has the legislator provided the means of
 
 good faith
 
 of the woman who is a wife. * * * The principles of equity join themselves then to all principles of right to demand that attribution of civil effects be given
 
 to all species of a null marriage.”
 
 (Italics ours.)
 

 On page 522, he says: “Thus principles of equity and both judicial and historical theories of the reduction of the Code all prove that null mariages, that is to say
 
 null ah initio
 
 as well as those rendered null by annulling will produce the civil effects of a valid marriage where they have been contracted
 
 in good faith.
 

 “It is under the condition of
 
 good faith
 
 of. the spouses, or one of them, that the null marriage produces civil effects, and this condition, as we see in these two articles, is all that the law exacts. This good faith exists
 
 in the thought,
 
 erroneous, but reasonable in the person, that the marriage has been validly contracted before the law.” (Italics ours.)
 

 In Succession of Buissiere, 41 La.Ann. 217, 5 So. 668, 669, an uncle married a niece in Mississippi.
 

 In that case this court said: “From the views expressed in France, by distinguished
 
 *801
 
 commentators, as well as from the opinions there announced in some 10 cases, it appears that it is now a recognized and established principle that
 
 good faith
 
 may result as well from an error of
 
 law
 
 as from an error of
 
 fact,
 
 and that the parties contracting marriage, under circumstances from which such errors arise, are entitled to the relief allowed by law. [Italics ours.] Marcade on Art. 204; Duvergier Toullier 1, No. 651, note a; Demolombe 3, 357, 543 et seq.; Aubry & Rau 5, p. 46, par. 460; Zachariae 1, 125; Laurent 2, n. 504; Accollas 1 pp. 109, 181; Paris 9 Mess an XIII pp. 38, 1, 77; 18 Dec. 1837; 1938, p. 1, 78; Limoges 25 Aout 1841, p. 54, 1, 315; 5 Jan. 1842, also 1840; Aix, 11 Mar 1858, p. 58, 1082, 1860, 1871, 1880, and authorities in defendants’ brief.
 

 “There is no reason why this humane exposition of the law should be questioned, and still less why we should run counter to it.
 

 “We therefore adhere to it, and hold that the principle ought to be applied to the instant case, and therefore that, if circumstances exist which were susceptible of inducing the belief in the wife that her marriage with her uncle could be valid, her good faith must protect her and her innocent offspring.”
 

 Under article 95 of the Civil Code, as well as under articles 162 and 163 of the Code Napoleon, marriage between an uncle and niece is prohibited.
 

 Under article 12 of our Code, it is declared that anything “done in contravention of a prohibitory law is void, although the nullity be not formally directed.”
 

 The Buissiere Case shows to wliat length this court will go to protect the
 
 innocent offspring
 
 of even an
 
 incestuous
 
 union.
 

 The concurring opinion of Justice Fenner in the Buissiere Case is peculiarly applicable to the case now before us: “While the evidence is not altogether satisfactory to my mind, yet, considering the finding of my brethren; the minority and sex of the party; her ignorance of the English language; her nativity in France, where such marriages may be legalized; her recent arrival in this country; her seclusion in á convent; her subordination to the man who married her, who was greatly her senior, and to whose charge and protection she had been confided; the approval and advice, and participation given, by her parents to the marriage; and the fact that the marriage no longer exists, and no public interests are involved conflicting with those of the mother and her innocent offspring, — I find strong circumstances going to make the case peculiar and exceptional, and robbing it of serious danger as a precedent.”
 

 In Jones v. Squire, 137 La. 883, 892, 69 So. 733, 736, it is said: “And if there were any doubt in the matter it would have to be solved in favor of the good faith of the parties. Succession of Navarro, 24 La.Ann. 298; Gaines v. City of New Orleans, 6 Wall. 642, 18. L.Ed. 950.
 

 “ ‘The good faith referred to means an honest and reasonable belief that the marriage was valid and that there existed no legal impediment thereto.’ Smith v. Smith, 43 La.Ann. [1140] 1148, 10 So. 248. * * *
 

 
 *803
 
 “That this was
 
 an error
 
 makes no difference; for
 
 good faith
 
 in such a case results from an error of
 
 law
 
 as well as from an error of
 
 fact.
 
 Succession of Buissiere, 41 La.Ann. 217, 5 So. 668.” (Italics ours.)
 

 In Succession of St. Ange, 161 La. 1085, 1092, 109 So. 909, 912, the court said: “ ‘Marriage is regarded by our law in no other light than as a civil contract, highly favored, and depending essentially on the free consent of the parties capable by law of contracting. Our Code does not declare null a marriage not preceded by a license, and not evidenced by an act signed by a certain number of witnesses and the parties; nor does it make such an act exclusive evidence of a marriage. These laws relating to forms and ceremonies, here regarded as directory to those alone who are authorized' to celebrate marriages, are intended to guard against hasty - and inconsiderate marriages in defiance of parental authority. Like all other contracts, it may be proved by any species of evidence not prohibited by law, which does not presuppose a higher species of evidence within the power of the party;
 
 and cohabitation as man and wife, furnishes presumptive evidence of a preceding marriage.1 11
 
 Quoting Holmes v. Holmes, 6 La. 463, 26 Am.Dec. 482. (Italics ours.)
 

 “Good faith in contracts is always presumed; the onus of proof is on him who alleges fraud or bad faith.” Succession of Navarro, 24 La.Ann. 298, 299; Rogron, Code Napoleon, explique liv, 1, art. 201, Marcade Droit Civil, vol. 1 tet, v. du marriage p. 553.
 

 In Smith v. Smith, 43 La.Ann. 1140, 1149, 10 So. 248, 250, it is said by this court: “The Code provides, as we have seen, that the putative marriage produces its ‘civil effects’ as it relates to parties in good faith.
 

 “The words ‘civil effects’ are used without restriction, and necessarily embrace all civil effects given to marriage by the law; or, in the language of Marcade in commenting on the identical article in the French Code, such a marriage, ‘although actually null, has the same effects, as if it were not null, — the ordinary effects of a valid marriage. * * * Every marriage, though invalid, if contracted in good faith, produces the effects of a valid marriage in the interval between the celebration and the judicial declaration of nullity. When once such declaration intervenes, the marriage produces no further effect; but, be it understood,
 
 the effects produced remain forever.1
 
 I Marcade, 525.
 

 “The marriage of plaintiff was never declared null during the life of Alexander Smith. It existed as a putative marriage
 
 at the instance of his death,
 
 and the civil effects resulting therefrom
 
 were then complete and indestructible.11
 
 (Italics ours.)
 

 “The law favors those who are deceived against those who deceive.” Patton Case, 1 La.Ann. 98, 106.
 

 In Succession of Curtis, 161 La. 1045, 1051, 109 So. 832, 834, it is said: “‘A child is presumed to be legitimate until the contrary is shown.’ 7 C.J. 940.
 

 
 *805
 
 “The presumption of legitimacy is based upon broad principles of natural justice and the supposed virtue of the mother.
 

 “ ‘The presumption in favor of marriage and the legitimacy of children is one of the strongest known to, the law, and in favor of a child asserting its legitimacy this presumption applies with peculiar force.’ Teter v. Teter, 101 Ind. 129, 51 Am.Rep. 742; Franklin v. Lee, 30 Ind. App. 31, 62 N.E. 78.
 

 “In Ingersol v. McWillie, 9 Tex.Civ.App. 543, 30 S.W. 56; Shuman v. Shuman, 83 Wis. 250, 53 N.W. 455; and Godfrey v. Rowland, 16 Hawaii, 377, it is held that—
 

 “ ‘The presumption of legitimacy is a constant presumption, and is to have weight and influence throughout the investigation, the weight of the presumption increasing with lapse of time.’ ”
 

 The allegations in plaintiff’s petition that, after what had transpired at the clerk’s office where Ulisse Marinoni, Jr., informed plaintiff’s mother that they were legally married, the parties immediately thereafter cohabited,
 
 as man and wife
 
 at Gulfport, and then at Biloxi, Miss., and later in the city of New Orleans, must be accepted as true, as far as the disposal of the exception of no cause or right of action is concerned.
 

 Cohabitation as man and wife furnishes presumptive evidence of a preceding marriage, and is convincing proof that the circumstances which did exist induced the honest belief in the mother of plaintiff that she was legally married to Ulisse Marinoni, Jr. Her good faith must protect her and her innocent offspring, to whom it is also alleged that her father, Ulisse Marinoni, Jr., contributed considerable sums of money, during her minority, for her care and education. Succession of St. Ange, 161 La. 1085, 1092, 109 So. 909.
 

 The good faith referred to as constituting a putative marriage means an honest and reasonable belief that the marriage was valid, and not that the marriage was actually and legally valid.
 

 That this was
 
 an error
 
 on the part of plaintiff’s mother makes no difference; for good faith in such a case results from error of
 
 law
 
 as well as from error of
 
 fact.
 
 Jones v. Squire, 137 La. 883, 892, 69 So. 733.
 

 “This good faith exists
 
 in thought,
 
 erroneous, but reasonable in the person, that the marriage has been validly contracted before the law.” Marcade, vol. 1, p. 522. (Italics ours.)
 

 “Good faith consists of being
 
 ignorant
 
 of the cause which prevents formation of the marriage,
 
 or the defects in its celebration
 
 which cause its nullity.” First Planiol, Droit Civil, 3d Ed. (Italics ours.)
 

 Two exceptions of no cause or right of action were filed to the original and amended petitions; one by Olga Marinoni, wife of William T. Nolan, executor, which was maintained in a judgment of date May 14, 1934, and plaintiff’s suit dismissed; the other exception was filed by William T. Nolan, executor, and not passed upon, and this defendant has filed an answer to the appeal, praying, in the alternative, that it be sustained by this court.
 

 
 *807
 
 Accepting the state of facts alleged in plaintiff’s petition as true, for the purpose only of disposing of the exceptions of no cause or right of action, our conclusion is, for reasons already assigned, that a cause or right of action has been set forth by plaintiff in her petition.
 

 Necessarily, the judgment appealed from maintaining the exception of no cause or right of action must be reversed, and the similar exception filed by the executor must be overruled.
 

 Twq pleas of res adjudicata were also filed to the original and amended petitions; one by Mrs. Olga Marinoni Nolan, wife of William T. Nolan, executor, which was maintained in a judgment of date May 14, 1934, and plaintiff’s suit was dismissed; the other plea of res adjudicata was filed to the original and amended petitions by William T. Nolan, executor, and was maintained in a judgment of date May 15, 1934, and plaintiff’s suit dismissed. Each one of these judgments was appealed from separately by plaintiff, Rita Marinoni, wife of John Lewis.
 

 In the original opinion it is stated: “Defendants filed a plea of res adjudicata and an exception of no cause of action.”
 

 However, the original decree reads as follows: “For the reasons assigned
 
 the judgment
 
 sustaining
 
 the plea
 
 of res adjudicata and dismissing plaintiff’s suit -is correct and
 
 is
 
 therefore affirmed.” (Italics ours.)
 

 In our opinion, for reasons already assigned, our original decree must be set aside, and both judgments maintaining the pleas of res adjudicata must be reversed.
 

 The plea of res adjudicata and the plea of no cause or right of action made by Olga Marinoni, wife of W. T. Nolan, executor, are both maintained in one and the same judgment of date May 14, 1934.
 

 Exceptions of vagueness filed by defendants to plaintiff’s original petition were maintained in the dower court, and, under leave of court, plaintiff filed' an amended petition.
 

 Additional exceptions of vagueness were filed by William T. Nolan, executor, and Olga Marinoni, wife of William T% Nolan, executor, to the original and amended petitions.
 

 Defendants, in their answers to the ap - peal, assert that these exceptions were not passed upon in the lower court, and pray that, in the alternative, they be reserved in the event of a remand of this cause to that court.
 

 We do not agree with this contention of defendants. The trial judge ordered the petition to be amended, because of the first exceptions of vagueness filed by defendants. Thereafter, he maintained the exception of no cause or right of action filed by Olga Marinoni, wife of William T. Nolan, executor. At that time, plaintiff had filed in the record the two affidavits made by Ulisse Marinoni, Jr., in his application for a marriage license. (T. 8) act' of compromise annexed to and made part of the Supplemental petition. (T. 12). Plaintiff had also enlarged and clarified the Plaintiff had also filed in the record the
 
 *809
 
 allegations in the supplemental petition, by alleging: “That the statements and documents made by her mother when your petitioner was an infant and which your petitioner claims were false and untrue, and which were obtained by her father from her mother by reason of payment of Six Thousand Dollars ($6,000.00), have been submitted to opposing counsel and are contained in the photostats in the brief filed by Mr. Oliver P. Carriere, attorney for Mrs. A. P. Provosty, and which is made a part of this petition to show the falsity and illegality of the statements contained in said photostats as far as petitioner is concerned, and in a certain act of compromise entered into between her mother and her father before Wm. J. Fórmente,, Notary Public, dated March 31, 1902, which is equally false, misleading and purchased by the same bribe, and like aforesaid photostats is in no way binding on petitioner.
 

 “That petitioner annexes said brief containing said photostats and said act of compromise hereto as Exhibits 1 and 2 and makes the same a part of this petition as Rem Ipsam, and prays for citation of defendant and for judgment as stated in her original petition and equitable relief.” (T. 11)
 

 The main pertinent allegations of the petition have already been copied in this opinion. With the additional data furnished, we fail to see wherein the petition can be made amenable to the charge of vagueness. It cannot be presumed that a judge would sustain an exception of no cause or right of action, in the face of an exception of vagueness, and leave that exception standing, if he thought it should be maintained. His action in the matter .must be construed as overruling the additional exceptions of vagueness, and we find no error in his ruling.
 

 Mrs. Olga Marinoni Nolan, sister of Ulisse Marinoni, Jr., and universal legatee under his will, excepted to plaintiff’s petitions, original and amended, on the ground that exceptor, not having accepted or rejected the succession of Ulisse Marinoni, Jr., and the succession still being under administration, is not a proper party defendant in this suit. Defendant prays, in the alternative, that this exception, not passed upon in the lower court, be maintained.
 

 The exception of nonjoinder is without merit, for the plain reason that Mrs. Olga Marinoni Nolan, in her capacity as universal legatee, is here defending this suit, and has filed exceptions of vagueness, no cause of action, and res adjudicata, and all of these exceptions were maintained in the lower court.
 

 The will of the late Ulisse Marinoni, Jr., is dated November 17, 1930, and was probated September 18, 1931. The present suit was not filed until June 14, 1933. Mrs. Olga Marinoni Nolan has not yet renounced her rights as universal legatee in the estate of Ulisse Marinoni, Jr. She is not presumed to renounce such rights, and there is no suggestion of any reason why she should do so. As universal legatee, she is necessarily a proper party to this suit. It may well be that such interest might impinge upon the légitime claimed
 
 *811
 
 by plaintiff as a civil effect flowing from the alleged putative marriage of her mother in this case.
 

 The exception of nonjoinder is not well taken and is overruled.
 

 Olga Marinoni, wife of William T. Nolan, and William T; Nolan, executor, also filed exceptions to the original and amended petitions on the ground of nonjoinder of proper parties, in that the mother of plaintiff, Mrs. Josephine Bartoletti, is not made a party to these proceedings. These exceptions were not passed upon in the lower court, and defendants pray, in the alternative, that these exceptions be maintained.
 

 The prayer of the plaintiff is “that the provisions of the last will and testament of the deceased,
 
 disposing of petitioner’s legitime,
 
 be annulled and .that petitioner be declared entitled
 
 to inherit one-third
 
 of her said father’s estate as the issue of a putative marriage contracted by her mother in good faith and in the full belief that she was legally married to Ulisse Marinoni, Jr., at the time of petitioner’s conception, and be sent into possession of same and for general and equitable relief.” (T. 7) (Italics ours.)
 

 The plaintiff is a married woman. Her mother has no present interest whatever in any legitime plaintiff may recover, nor is her mother named as legatee, or otherwise, in the last will of Ulisse Marinoni, Jr. Plaintiff prays for judgment against the executor and the universal legatee under the will.
 

 The decedent has had no children born of his present wife, Mrs. Adina Provosty Marinoni, but states in his will that he has adopted a baby boy named Oliver Otes Provosty Marinoni. The Civil Code (article 214) specifically declares that “such adoption shall not interfere with the rights of forced heirs,” and plaintiff alleges herself to be
 
 a forced heir
 
 as the civil effect of the putative marriage of her mother to Ulisse Marinoni, Jr., deceased.
 

 The exceptions of nonjoinder are overruled.
 

 On July 17, 1935, Mrs. Olga Marinoni Nolan, wife of William T. Nolan, departed this life, since this appeal was taken, and, by order of this court of date October 8, 1935, Anita Marinoni Nolan, Ulisse Marinoni Nolan, Katharine Elizabeth Nolan, and Olga Nolan, wife of William J. Crutcher, the sole heirs of Mrs. Olga Marinoni Nolan, deceased, appellee herein, were substituted appellees in the place of their deceased mother.
 

 This litigation has been a war of exceptions, dilatory and peremptory. This case has been pending in the courts for more than two years and the merits have not yet been reached. It is a matter of public policy that there shall be an end of lawsuits.
 

 It is therefore ordered that our original decree be and is hereby annulled and reversed, and that the judgment of the lower court, of date May 14, 1934, maintaining the exception of no cause or right of action and the plea of res adjudicata, made by Olga Marinoni, wife of William T. No
 
 *813
 
 lan, executor, be and is hereby also annulled and reversed.
 

 Jt is further ordered that the judgment, of date May 15, 1934, maintaining the plea of res adjudicata made by William T. Nolan, executor, be and is hereby also annulled and reversed.
 

 It is now ordered that there be judgment in favor of plaintiff, Rita Marinoni, wife of John Lewis, and against William T. Nolan, executor, and the substituted appellees, Anita Marinoni Nolan, Ulisse Marinoni Nolan, Katharine Elizabeth Nolan and Olga Nolan, wife of William J. Crutcher, the sole heirs of Mrs. Olga Marinoni Nolan, deceased, overruling the exception of no cause or right of action herein filed by William T. Nolan, executor; also the additional exceptions of vagueness, filed by Mrs. Olga Marinoni Nolan, wife of William T. Nolan, and by William T. Nolan, executor; also the exception of nonjoinder filed by Mrs. Olga Marinoni Nolan, wife of William T. Nolan, executor, that exceptor not having accepted or rejected the succession of Ulisse Marinoni, Jr., and said succession still being in administration, exceptor is not a proper party defendant in this suit; also the exceptions of nonjoinder of proper parties, filed by Mrs. Olga Marinoni Nolan, wife of William T. Nolan, and by William T. Nolan, executor, in that the mother of plaintiff, Mrs. Josephine Bartoletti, is not made a party to these proceedings.
 

 It is further ordered that this case be remanded to the lower court to be proceeded with in due course, and in accordance with the views herein expressed.
 

 The right to apply for rehearing is reserved as to all matters herein decided, except as to the pleas of res adjudicata.
 

 O’NIELL, C. J., dissents, especially from the ruling that there can be a putative marriage, where there is in fact no marriage at all.
 

 ROGERS, J., dissents.
 

 ODOM, J., dissents and hands down reasons.