Eastern Dis.
*May*, 1834

HOLMES
*vs.*
HOLMES.

The wife cannot vote in the deliberations of creditors, unless her rights have been settled by partition or a judgment.

## HOLMES *vs.* HOLMES.

APPEAL FROM THE PARISH COURT FOR THE PARISH AND CITY OF NEW-ORLEANS.

Marriage is regarded in no other light than a civil contract highly favored.

The *Louisiana Code* does not declare null a marriage not preceded by a license, and not evidenced by an act signed by a certain number of witnesses and the parties; nor does it make such an act exclusive evidence of a marriage. These laws relating to forms and ceremonies, are directory to those alone who are authorised to celebrate marriages.

Marriage may be proved by any species of evidence not prohibited by law, which does not presuppose a higher species of evidence in the power of the party. Cohabitation as man and wife furnishes presumptive evidence of a preceding marriage.

A bill of exceptions to the rejection of depositions which are not before the Supreme Court, not specifying the grounds upon which they were rejected, is too vague to be examined in this court.

This action was brought to recover one thousand dollars damages for an alleged breach of a contract of passage

EASTERN DIS.
*May*, 1834.

HOLMES
*vs.*
HOLMES.

The plaintiff avered that on the 15th day of November, 1832, Eliza Holmes, his wife, being then in Liverpool, engaged passage to New-Orleans on board the ship Princess, commanded by George W. Holmes, for herself and child. She engaged a cabin passage, but agreed to sleep in a state room in the steerage, and find her own bedding, for one hundred dollars, the state rooms in the cabin being all taken up. Having made this arrangement, the wife of the plaintiff conducted herself with perfect propriety during the voyage.

That Holmes, without any just cause, prohibited her from eating with the cabin passengers, and ordered her to eat with the servants in the lower cabin, and subsequently ordered her not to come into the cabin at all, but to remain and eat in the steerage, and to pass up and down the hatchway appropriated for the steerage passengers. In the course of the voyage, he refused to furnish her sufficient nourishment, or at the necessary intervals, for herself and child; that he refused her the light necessary to take proper care of her child, or a chair in her state room; and, in the course of the voyage, without any cause, threatened to put her in irons.

The defendant excepted that not being acquainted with the plaintiff, he had no knowledge of the fact of his being the husband of Eliza Holmes; he denied the same, and required proof thereof, before he should be required to answer to the plaintiff's petition on the merits. He also excepted that if the plaintiff be the husband of Eliza Holmes, he cannot, in his own name, institute and prosecute a suit for the matters and things charged in his petition.

The judge *a quo* considering the first exception as going to the merits, and the second as unsustainable by the 10th article of the *Code of Practice*, dismissed them, and ordered the defendant to answer on the merits.

He denied all and singular the allegations in the petition contained, excepting so far as specially admitted. He said that Eliza Holmes, with her child, embarked at Liverpool on board of the ship Princess, commanded by him, but he

denies that he has in any manner violated the contract made by him with said Eliza Holmes; he says that any charge made in the manner of accommodating the said Eliza Holmes on board the aforesaid ship was called for and justified by her improper behaviour. Being ignorant whether said Eliza Holmes be married as alleged by the plaintiff, he requires strict proof of said marriage, which he denies to exist.

*Elizabeth Smith*, testified that she came passenger on board the ship Princess, from Liverpool, in November, 1832; Mrs. Holmes came passenger on board said vessel. In the first part of the voyage, Mrs. Holmes eat in the cabin, with her child, but was afterwards exchanged from the cabin; she was ordered into the steerage, and was furnished with the fragments left by the cabin passengers, for her meals.

*J. C. Woods*, testified that he was present when Mr. Holmes offered to pay the passage of his wife from Liverpool to New-Orleans, provided the captain would give him a receipt stating that he had agreed that his wife should come out in the cabin; to which the captain answered that he would state that she had come in the steerage, and would deduct twenty-five dollars, which Mr. Holmes refused.

The plaintiff offered a witness to prove that the plaintiff and Mrs. Holmes, who were then in court, had lived in New-Orleans a length of time, and had a family, and were reputed husband and wife. The testimony was objected to, as illegal, and after argument, rejected. The plaintiff excepted.

The plaintiff took another bill of exceptions, in the following words: On the trial of the cause, the plaintiff offered in evidence the depositions on file, taken by Gallen Preval, Esq., associate judge of the city court, and his own affidavit on file, marked A, they were objected to as evidence, and after argument, rejected by the court; to which opinion of the court the plaintiff excepted.

It was admitted that no affidavit was filed on taking out the commissions, as required by article 430, *Code of Practice*; nor was there any consent by the defendant to waive that

formality. That no personal service was made of the time and place of taking the testimony, either on the party or his counsel, but was served on the steward of the ship of which the defendant was captain; and the return does not state his age, nor that he was a free man, but states, however, that the steward said the captain was asleep on board. That one notice was served at half past two o'clock, P. M., to take testimony, and another at four o'clock of the same afternoon; that the other notice was served on one day to take testimony, and also on the next day at half past eight o'clock in the morning.

The court below rendered a judgment of non-suit, from which the plaintiff appealed.

*Preston*, for the plaintiff and appellant, contended as follows:

1. The object of an affidavit is to induce the court to grant the commission. If the court grants it without an affidavit, that does not vitiate the commission. The commission is the authority of the court to take testimony to be read in evidence, in case the witnesses are absent. The court might refuse that authority, until satisfied by an affidavit of the necessity of granting it; but when satisfied without an affidavit, may grant the authority, which is not on that account void. It is apparent that the case exists which it would have made appear. Besides, it appears to us that article 430 of the *Code of Practice*, was intended to apply only to the taking of testimony before issue joined, which might put a party to some risk and inconvenience from want of preparation; but after issue joined, every facility should be given to the taking of testimony.

2. The notice given as to one of the commissioners, was manifestly sufficient.

3. The plaintiff was present in court with his wife prosecuting this suit, and yet the court required proof that she was his wife. This was unreasonable.

4. The plaintiff, however, offered to prove by his neighbours, that he had always lived and cohabited with his wife as such; that they were rearing a family as legitimate children. This was rejected. It has been unanimously admitted by courts as evidence of marriage. *Starkie on Evidence, p.* 937, *and following.* The case of *Taylor* vs. *Scott,* 3 *La. Reports, p.* 35, and the other cases cited by the defendant's counsel, prove the same thing.

*T. Slidell,* for the defendant and appellee, made the following points:

1. The Parish Court properly rejected evidence of cohabitation and long living together, to establish the fact of the plaintiff's marriage. If it be not shown that the marriage was contracted out of this state, it will be presumed to have been contracted here. If even it had been shown to have been contracted out of the state, yet, if the laws of the country in which the parties contracted is not set forth, the court must take that of this state as their rule. *Campbell* vs. *Miller,* 3 *N. S.,* 149. *Saul* vs. *his creditors,* 5 *N. S.,* 616. The *Civil Code, art.* 107, directs the mode of celebrating a marriage. " The marriage must be celebrated in the presence of three witnesses of full age, and an act must be made of the celebration, signed by the person who celebrates the marriage, also by the parties and the witnesses." It is a settled rule of evidence, that the best testimony must be produced of which the case is susceptible. The fact of marriage should be proved by the act or certificate contemplated in article 107 of the *Civil Code,* nor should inferior evidence be allowed, unless it were proved that this act had been lost or destroyed. The marriage license should also be produced, since without it, the person celebrating the marriage was not aathorised so to do. "*Article* 103. No marriage can be celebrated without the special license of the parish judge, directed to the priest, minister, or justice of the peace, who is to celebrate it. In the case of *Taylor* vs.

*Levett,* the introduction of parol proof of a marriage, was allowed on the ground that the marriage was shown to have been contracted in South Carolina, and on proof of the laws and customs of that state in relation to the proof of marriage, and of the legal presumptions there adopted by the principal courts of justice, arising from cohabitation in support of the existence of marriage, when no evidence could be adduced of its celebration. 3 *La. Reports,* 33.    In the case of *White* vs. *Holsten,* parol evidence of the marriage was admitted on the same ground, viz: that parol evidence of the fact or of circumstances from which it could be presumed, was allowed by the laws of North Carolina, where it took place. 4 *Martin,* 671.  In the case of *Wyche* vs. *Wyche,* 10 *Martin,* 414, the cohabitation of the parties was allowed to be proved, but then the marriage was contracted out of the state, and a marriage contract was also given in evidence.    A distinction was attempted to be made between cases where the marriage was the gist of the action and cases where it was only subsidiary to it.    It is difficult to conceive upon what grounds the fact of marriage in this case can be disconnected with the very substance of the action; for if the plaintiff be not the husband of Mrs. Holmes, who is alleged to have been maltreated by the defendant, and whose violated rights are the ground of the damages laid in the petition, he certainly is at once stripped of all authority to bring this suit. It is the fact of being her husband, which, by the article 107 of the *Code of Practice,* invests him with authority to bring this suit; the marriage is substantially the source of his right to sue defendant.    It has been explicitly directed in the answer.    It must therefore be established, and that too, as has been shown by the highest evidence which the case will allow, that is to say, by the act or certificate of the priest or other person, who celebrated it.

2. The court cannot notice the objection or exception of the plaintiff's counsel with regard to certain testimony taken under commission, inasmuch as the record contains neither the testimony alluded to, nor the return of the officer who served the notices on the defendant, nor indeed any thing

in relation thereto but the plaintiff's exception to the judge's opinion and a note of the clerk that the depositions have been returned but not filed. Where the court are not supplied with the proper means and data of making up their opinion, they will dismiss an appeal. *Somepeyrac* vs. *Cable,* 12 *Martin*, 431; *Wiltz* vs. *Dufau*, 10 *Martin*, 21; and many other similar cases.

3. In case of giving consent to have the commissions brought up and submitted to the court, I make the following points: 1st., That no affidavit was filed previous to taking out the commission, as required by article 430, of the *Code of Practice*. 2nd., That reasonable time was not given on service of notice to enable the party to attend, as required by article 436 of the *Code of Practice*. 3d., That in case of one of the examinations the notice was not duly served, having not been served on the party nor his advocate, but on the steward of the ship, and the return does not state the age or freedom of the steward. Moreover, the Code directs that the notice should be given to the party or his advocate, and does not seem to imply any other than a personal service. *Code of Practice, arts.* 199, 430.

Bullard, J., delivered the opinion of the court.

The plaintiff alleges that his wife and child came as passengers from Liverpool to New-Orleans in a vessel of which the defendant was master; that she engaged a cabin passage, but agreed to sleep in a state-room in the steerage, the state-rooms in the cabin being taken up. He claims damages for a violation of the contract, alleging that his wife was driven out of the cabin, compelled to eat with the servants, and in other respects ill treated on her passage.

The defendant admits that "one Eliza Holmes, with her child," did come out passengers in the ship, but he alleges that he did not violate his contract, and that any change in her accommodations on board was justified by her improper behaviour. He adds, that being ignorant whether said Eliza be married as is alleged by the plaintiff, he requires

strict proof of the marriage, which he denies to exist. On the trial, the plaintiff offered witnesses to prove that the plaintiff and Mrs. Holmes, who were then in court, had lived in New-Orleans a length of time and had a family, and were reputed husband and wife. This evidence was rejected by the court, a bill of exceptions taken, and a judgment of non-suit being rendered, the plaintiff appealed.

It is contended on the part of the appellee, that as the Code requires marriages to be celebrated in the presence of three witnesses, and an act to be drawn up and signed by the parties, the witnesses, and the person performing the ceremony, parole evidence is inadmissible to prove a marriage in this state.

Marriage is regarded in no other light than a civil contract, highly favored.

Marriage is regarded by our law in no other light than as civil contract, highly favored, and depending essentially on the free consent of the parties capable by law of contract-

The *Louisiana Code* does not declare null a marriage not preceded by a license, and not evidenced by an act signed by a certain number of witnesses and the parties, nor does it make such an act exclusive evidence of a marriage. These laws relating to forms and ceremonies, are directory to those alone who are authorised to celebrate marriages.

Marriage may be proved by any species of evidence not prohibited by law, which does not presuppose a higher species of evidence in the power of the party. Cohabitation as man and wife, furnishes presumptive evidence of a preceding marriage.

ing. Our code does not declare null a marriage not preceded by a license, and not evidenced by an act signed by a certain number of witnesses and the parties; nor does it make such an act exclusive evidence of a marriage. These laws relating to forms and ceremonies, here regarded as directory to those alone who are authorised to celebrate marriages, are intended to guard against hasty and inconsiderate marriages in defiance of parental authority. Like all other contracts, it may be proved by any species of evidence not prohibited by law, which does not presuppose a higher species of evidence within the power of the party; and cohabitation as man and wife, furnishes presumptive, evidence of a preceding marriage. It is not to be presumed those who hold themselves out in society as man and wife, who are rearing a family of children at their domestic board, to whom the father gives his name, over whom he exercises a parent's authority, and administers a parent's protection and support, are living in open disregard of public morals, and that their common offspring are bastards; such a family is already in the possession of a civil condition or *status*, not to be questioned lightly and collaterally. In the present case, the defendant, when he received on board

his ship Mrs. Holmes and child, must have presumed that she was a married woman or a widow. When he afterwards treated with the plaintiff about the price of their passage, he dealt with him as the husband and father; no question was then made of his authority.

If a different rule of evidence prevails in France, it is because the Code as well as previous ordinances provided for public registries of marriages, births and deaths, under the care of special officers, called "*officiers de l'Etat civil.*" Extracts from these registers are declared to be full evidence until proved to be forged; and second, any evidence is inadmissible without first proving that no such register was kept, or that it has been lost or destroyed. *Merlin's Repertoire. Verbo Etat Civil.* Our law has not enacted such a registry of marriages. We think the court erred in rejecting the evidence offered.

The second bill of exceptions is too vague to enable us to decide whether the depositions ought to have been admitted. It does not appear on what ground they were rejected by the court, nor are the depositions themselves befor us.

It is, therefore, ordered, adjudged and decreed, that the judgment of the Parish Court be avoided, reversed and annulled, and that the cause be reinstated and remanded for trial, with directions to the judge not to reject the evidence offered to show the cohabitation of the plaintiff with Mrs. Holmes as man and wife, and that the defendant and appellee pay the costs of appeal.