**(109 So. 832)**

**No. 27199.**

### Succession of CURTIS.

(June 28, 1926. Rehearing Denied Oct. 5, 1926.)

*(Syllabus by Editorial Staff.)*

**1. Marriage ⬤➞50(1).**

Evidence *held* to establish marriage.

**2. Evidence ⬤➞14.**

It is common knowledge that marriage of girls 16 years of age and less are, and have been, of frequent occurrence in Louisiana.

**3. Bastards ⬤➞3.**

A child is presumed legitimate until the contrary is shown.

Appeal from Civil District Court, Parish of Orleans; William H. Byrnes, Jr., Judge.

In the matter of the succession of Harriet M. Curtis. Suit for partition of estate by Joseph Curtis against Louis A. Curtis, Jr., and another. From a judgment recognizing plaintiff as entitled to a two-third interest in the estate, defendants appeal. Affirmed.

Carl C. Friedrichs, Charles G. Gill, and F. F. Teissier, all of New Orleans, for appellants.

W. O. Hart, of New Orleans, for appellee Joseph Curtis.

BRUNOT, J. Mrs. Harriet M. Curtis died, leaving an estate consisting of real and personal property. An alleged will was probated, but it was successfully attacked. A suit was then filed in which the title to two pieces of real estate was involved, both of which were finally decreed to belong to the succession, and the present suit for a partition of the estate followed. The real issue in this case is whether Mrs. Elizabeth M. Ryder, deceased, was the legitimate daughter of the late Mrs. Harriet M. Curtis.

The admitted facts are that Harriet M. Curtis was married to Michael F. Rogers, and the sole issue of the marriage was Joseph Curtis, the plaintiff in this suit, and Louis A. Curtis, Sr., deceased, the father of Louis A. Curtis, Jr., and Emma Curtis, wife of Paul L. Bechtel, the defendants herein; that Michael F. Rogers obtained a divorce from Harriet M. Curtis, who thereafter assumed her maiden name, obtained the custody of her two sons, the issue of her marriage to Rogers, and reared them under the name of Curtis. Plaintiff alleges that Harriet M. Curtis was married twice; that she was first married to James Sheldon; and that Mrs. Elizabeth Ryder was the sole surviving issue of that marriage; that Mrs. Ryder was the daughter, and one of the forced heirs, of Mrs. Harriet M. Curtis; and that Mrs. Ryder died without issue, but left a last will and testament, in which she named the plaintiff as her universal legatee. The defendants denied that Mrs. Harriet M. Curtis was married twice, or that Mrs. Elizabeth Ryder was her daughter. On these issues the matter was heard, submitted to the court, and a judgment was rendered recognizing Mrs. Ryder as the daughter and one of the heirs of Mrs. Harriet M. Curtis; recognizing the plaintiff as the universal legatee of Mrs. Elizabeth Ryder, and entitled, as such, to the one-third interest in the estate inherited by her; recognizing the plaintiff as the only surviving child of Harriet M. Curtis, and, as such, entitled to one-half of her estate, and recognizing Louis Adolph Curtis and Emma

Curtis, wife of Paul L. Bechtel, as grandchildren of Mrs. Harriet M. Curtis, and, as such, entitled to one-third of the estate. The judgment also sends the heirs into possession in the proportions named, orders a partition of the estate by licitation, and reserves to the defendants the right to compel the plaintiff to account for the rents and revenues of the property of the estate received by him. From this judgment the defendants appealed.

A mere reading of the judgment shows that, unless a typographical error was committed in copying the judgment in the transcript, a mistake was made in its apportionment of the estate among the heirs. It gives plaintiff one-half of the estate, in his own right, one-third as universal legatee of his half sister, and one-third jointly to the two grandchildren. Such a division of the estate is manifestly impossible. It was the evident intention of the court to divide the estate, as the law requires, into three equal parts, and to give to the plaintiff one-third thereof in his own right, and one-third as universal legatee of Mrs. Ryder, and, to the two grandchildren, the remaining one-third. Inasmuch as neither counsel has directed our attention to this part of the judgment, we must assume that the original judgment as rendered in the civil district court apportions the estate correctly. These comments are made merely to save the situation from possible dispute when the property of the succession is finally partitioned.

[1] Defendants contend that the burden is upon the plaintiff to prove the alleged marriage of Harriet M. Curtis to James Sheldon, and that Mrs. Elizabeth Ryder is a child of that marriage, because he is claiming a one-third interest in the estate thereunder. Defendants do not review the evidence, but on page 4 of their brief say:

"Joseph Curtis has not proved even the existence of the alleged James Sheldon; he has not proved the celebration or the existence of a marriage between Harriet M. Curtis and James Sheldon; nor has he proved that Elizabeth Ryder was a child of Harriet M. Curtis as the issue of any marriage."

Defendants offered no testimony whatever except five acts of sale showing that Mrs. Harriet M. Curtis acquired the properties described in said acts, and one act showing the alienation by her of certain property. On the other hand, Joseph Curtis, the plaintiff, Mrs. Margaret Curtis, Andrew Schmitt, and Philip Wang testified in support of the averments of the petition, and the depositions of Mrs. C. H. Fletcher, taken under commission, were offered by the plaintiff and admitted as evidence in the case.

Plaintiff testified that he was 61 years old when this case was heard in 1925; that his mother, Mrs. Harriet M. Curtis, died in 1919 at the age of 92 years; that Mrs. Elizabeth Ryder was 74 years old when she died; that Mrs. Ryder was the daughter of Mrs. Harriet M. Curtis; that her maiden name was Elizabeth Sophia Sheldon; that she married Ryder some time in the '60's before the recollection of witness; that he does not know when his father and mother were married; that his mother always called Mrs. Ryder daughter, and the latter always called and spoke of Mrs. Harriet M. Curtis as Mother or Ma; and that, after Mr. Ryder died, Mrs. Ryder lived with her mother, Mrs. Harriet M. Curtis.

Mrs. Margaret Curtis, wife of the plaintiff, testified that she had known Mrs. Harriet M. Curtis and Mrs. Elizabeth Ryder for about 12 years; that during all of that time Mrs. Ryder lived with her mother, Mrs. Margaret Curtis, and her brother, Joe Curtis; that Mrs. Curtis and Mrs. Ryder treated one another, and addressed one another, as mother and daughter; that Mrs. Curtis called Joe Curtis her son, and Mrs. Ryder and Joe Curtis treated each other as sister and brother; and that they were one family, mother, brother, and sister.

Mr. Andrew Schmitt testified that he had

known Mrs. Harriet M. Curtis for 18 years; that he also knew Mrs. Ryder; that Mrs. Ryder lived with Mrs. Curtis; and that Mrs. Curtis told witness that Mrs. Ryder was her daughter and Joe Curtis was her son.

Mr. Philip Wang testified that he knew Mrs. Curtis and Mrs. Ryder from some time in 1917, until they died; that he met them at his store and at the house of Mrs. Curtis; that they addressed one another as mother and daughter; and Mrs. Curtis told him Mrs. Ryder was her daughter.

Mrs. Carrie Hill Fletcher, of West Chelmsford, Mass., whose testimony was taken under commission, says, in answer to interrogatory No. 3:

"My mother had a sister named Harriet Curtis, who was born January 21st, 1831."

In answer to interrogatory No. 4, the witness says:

"I knew of my mother's sister as Aunt Harriet Sheldon, wife of a Mr. Sheldon, but do not remember his first name."

Interrogatory No. 7 and the answer of the witness thereto follow:

"Have you any family record of your grandparents and of their children? and, if you have, please have the officer who takes this testimony make a copy thereof and have you sign it, and attach it to your answer.

"Answer: Family record as furnished me by my mother and from records in an old family Bible."

To the answers there is attached a copy from the Bible, giving the information called for by the interrogatory, and the marriage record as it appears in the Bible is as follows:

"Name: Harriet Curtis; born January 21, 1831; married to Sheldon."

Because of the long lapse of time since the marriage of Mrs. Curtis and James Sheldon, which occurred at least several years before the second marriage of Mrs. Curtis, and long before the birth of the plaintiff, who is one of the children born of her second marriage, and because, if the marriage of Mrs. Curtis and James Sheldon was celebrated in the city of New Orleans, the ceremony antedated the keeping of official marriage records in said city, it is fairly presumable that documentary proof of the marriage is not available, and that the proof offered in this record was the best and only proof obtainable to establish that marriage. In two of the acts of sale, offered in evidence by the defendants, Mrs. Curtis declared her marital status to be "Widow Harriet M. Curtis, divorced wife of Rogers." We think this declaration may be fairly construed as meaning that the vendee was the widow of her first husband and the divorced wife of her second husband.

[2] Counsel for defendants in their second supplemental brief cite the dates of the birth of Mrs. Curtis and of the death of Mrs. Ryder, and stress the fact that the dates mentioned show that Mrs. Curtis was only 16 years old when Mrs. Ryder was born, and, therefore, that the alleged marriage of Mrs. Curtis and James Sheldon is very improbable. It is a matter of common knowledge that the marriage of girls 16 years of age and less are, and have been, of frequent occurrence in this state. That fact alone casts no doubt whatever upon such a marriage or upon the legitimacy of the issue thereof. In this connection we may fairly refer to an instrument which Mrs. Curtis handed to her attorney in 1918, declaring that it contained her will. This court found, in Succession of Curtis, 149 La. 487, 89 So. 629, that the instrument purporting to be the olographic will of Mrs. Curtis was not dated and it was not in her handwriting, but it was shown that she handed the instrument to her attorney, declaring it to be her will, and, whether the will was written by her or by another from her dictation, it nevertheless contained the declaration that Mrs. Curtis was the widow of James Sheldon, and that Mrs. Ryder was her daughter. This declaration is in accord with every proven utterance or act of Mrs. Curtis throughout her life, with reference to her marriage to James Sheldon and the le-

gitimacy of Mrs. Ryder, the issue of that marriage.

[3] "A child is presumed to be legitimate until the contrary is shown." 7 C. J. 940.

The presumption of legitimacy is based upon broad principles of natural justice and the supposed virtue of the mother.

"The presumption in favor of marriage and the legitimacy of children is one of the strongest known to the law, and in favor of a child asserting its legitimacy this presumption applies with peculiar force." Teter v. Teter, 101 Ind. 129, 51 Am. Rep. 742. Franklin v. Lee, 30 Ind. App. 31, 62 N. E. 78.

In Ingersol v. McWillie, 9 Tex. Civ. App. 543, 30 S. W. 56; Shuman v. Shuman, 83 Wis. 250, 53 N. W. 455; and Godfrey v. Rowland, 16 Hawaii, 377, it is held that—

"The presumption of legitimacy is a constant presumption, and is to have weight and influence throughout the investigation, the weight of the presumption increasing with lapse of time."

The doctrine announced in the cases from which we have quoted is applied in every jurisdiction in this country, and it is therefore clear that he who questions the legitimacy of children must prove the facts necessary to sustain his contention. In this case defendants have offered no proof. For these reasons we find that the judgment appealed from is correct, and it is therefore affirmed at appellants' cost.

ROGERS, J., takes no part.