## JOHNSON v. HOGAN & WINCHESTER TRANSFER CO. et al.

### No. 1658.

Court of Appeal of Louisiana. First Circuit.

Dec. 10, 1936.

C. A. Blanchard, of Donaldsonville, for appellant.

Rene H. Himel, of Franklin, for appellee.

LeBLANC, Judge.

Plaintiff appeals from a judgment in the district court which rejected her demand for compensation against the defendants and dismissed her suit at her costs. She claims to have been the mother of Joe King who was killed in an accident while acting within the course of his employment by the defendants, and, as such, dependent upon him within the provisions of the Workmen's Compensation Law of this state (Act No. 20 of 1914, as amended).

Her original petition which alleged merely that she was the mother of the decedent was met with an exception of no cause or right of action whereupon, under stipulation of counsel, she filed a supplemental petition in which she alleged that the decedent, Joe King, was a legitimate child, issue of her marriage with James King to whom she was married about the year 1882, the marriage ceremony having been performed by a justice of the peace at Centerville, La. She further alleged that she has lost the marriage license or certificate which she is unable to locate and that upon application to the clerk of court of St. Mary parish it appeared that the same had never been recorded.

There are two issues presented by the defense, first, a denial of the marriage alleged by the plaintiff and the consequent illegitimacy of the deceased, Joe King, and, second, a denial of the alleged dependency of the plaintiff upon the said decedent. The trial judge sustained the first defense, holding that there was no proof of the marriage and therefore found it unnecessary to pass on the question of dependency.

The sole proof in the record concerning the alleged marriage between the plaintiff and James King consists of plaintiff's own testimony, and while she tells of having been married to him her testimony is so vague and indefinite that it merits but little, if any, consideration at all. Whereas she had alleged that the marriage took place about the year 1882, in her testimony she states that it was in 1880, and whilst the petition alleges that the marriage ceremony had been performed by a justice of the peace, her testimony is, "I think it was a Judge, that is all I can say." When asked who was present when the marriage took place, she answers, "A fellow by the name

of Clarence, but he is dead." On cross-examination she was asked why it was she had no marriage certificate and her answer was, "I married him over 50 years ago, I might have had a certificate, but I must have lost it." When asked where was she living when Jim (her alleged husband) died, she answered: "I was living alone for so long, I forgot I ever had a husband."

Not a single witness was produced who knew them to have lived together as husband and wife and outside of her testimony as referred to and the further statement that Joe King was born in the month of December of the same year that she was married, and that she raised him as a child, there is absolutely nothing further to substantiate the alleged fact of a marriage.

There seems to have been a lack of uniformity in the decisions of the Supreme Court on the quality and amount of proof required to support a marriage contract, but it appears to be well settled now that once the party alleging the marriage contract has shown his or her inability to produce the marriage license or certificate, or some other written document, secondary proof in the way of oral testimony will be received, and if found strong and reliable enough, will be accepted as proof of the contract. The decisions on this question seem to have been influenced by the presumption that a man and woman living together and so conducting themselves and having the general reputation in the community of being husband and wife were actually married. But in all the cases where they were held to have been married, the evidence was, as the court said it must be in the case of Watson v. Lawrence, 134 La. 194, 63 So. 873, 874, L.R.A.1915E, 121, Ann.Cas.1916A, 651, "consistent and cogent." True it is that in that case the court also said that the marriage "may be proved by the testimony (if admissible) of one of the parties to the marriage," but it certainly meant that the party testifying must be a reliable person and the testimony must be of a substantial nature and convincing character. Any other meaning could not be reconciled with its other statement to the effect that "the evidence upon the subject must be consistent and cogent."

The marriage contract, although regarded in law as a civil contract only, is usually accorded more dignity than the ordinary contract. Our Code (Civ.Code, art. 86 et seq.) prescribes certain solemnities for its execution which are not required in the case of other civil contracts. For instance, the parties desiring to enter into the contract have first to secure a license from the proper authority, and the intended husband has to furnish a bond. Then the parties have to go through a formal ceremony which can only be performed by a licensed minister or priest, or a qualified judge or justice of the peace, and in presence of three witnesses, and a certificate of the officiating minister or judge must be returned to the officer who issued the license. These solemnities are exacted because of the serious nature of the contract and of the important results which flow from it; and whilst we recognize, as we have already stated, that where written or documentary proof of the observance of these requirements cannot be produced, secondary proof by oral testimony can be received, we do not think that any court would be justified in holding that they had been complied with on the vague, indefinite, and flimsy testimony presented in this case.

The judgment of the lower court is undoubtedly correct and it is accordingly affirmed.