HIGGINS, Justice,
 

 On July 5, 1933, Joseph Gaudinse (colored) died, intestate at his domicile in the city of New Orleans. In February 1935, Jules Gaudinse, claiming that he was the brother of the deceased, made application to be 'appointed administrator of the estate, alleging that the deceased died without having been married and without any heir other than himself. After having been appointed and duly qualified as administrator of the succession, he obtained an • order from court to sell the immovable property belonging to the estate for the purpose of paying the debts.
 

 While the property was being advertised for sale, Marguerite Maximillian Gaudinse intervened, alleging that she was the surviving widow in community of the deceased, having been married to him in the year 1896. She was joined in the petition by her five children, who claimed to be the surviving legitimate offspring of the marriage. They prayed that the order of sale be revoked; that the administrator be ordered to file an account of his gestión; and that they be recognized as the widow in community and the forced heirs of the deceased, respectively, and placed in possession of his estate.
 

 There was judgment in favor of the interveners, as prayed for, and the administrator has appealed.
 

 On the trial of the case on the merits, the interveners sought to prove the marriage by secondary evidence, stating that the record of the marriage was unavailable. Counsel for the administrator objected to the alleged widow’s testimony on the ground that parol evidence is incompetent to prove marriage until it is first shown that there was a record'of the marriage and that it had been lost or destroyed and cam not be produced. The obj ection was overruled by the court, with the understanding that it would be equally applicable to all similar evidence. She then testified that in the year- 1896, when she was 14 or 15 years of age, because her parents objected to her marriage, she eloped with the de
 
 *847
 
 ceased and went to Mississippi by train; where she was married to him by a minister; that she could not remember’the date or place of the marriage because it took place so many years ago when she was a mere girl, at a place she had never been before, and nothing occurred since then to impress upon her memory the date and place of the ceremony; that she returned to the home of her parents, where she lived with her husband as his wife until his death in July, 1933; that the marriage certificate was given to her husband after the marriage by the minister and he kept it in a small cotton sack with other valuables; that this sack and its contents were stolen by thieves who burglarized their home.one night; that the certificate was similar to the one her daughter has; and that there were nine children born of the marriage, four of whom died in infancy, the other five surviving children being the interveners herein. She corroborated her testimony by producing baptismal certificates dated from 1897 through 1919 from the registry of the St. Louis Cathedral, the St. Augustine Church and -the Holy Redeemer Church, all located in New Orleans, showing that each of her five children were batized as the children “of Joseph Gaudinse and his wife, Marguerite Maximillian.” She stated that she is the Marguerite Maximillian named in the baptismal certificates and that the Joseph Gaudinse named therein is the deceased. She also produced certificates showing that Holy Communion was received by the children of Joseph Gaudinse and Marguerite Maximillian, and that they were confirmed by the Catholic Church.
 

 The assistant priest and archivist of the St. Louis Cathedral testified that those certificates produced by the alleged widow were true and correct certificates from the baptismal records of that Church; that under the Canon Law of the church and the rules of the St. Louis Cathedral, when children are presented for baptism, the priest performing the ceremony inquires if the parents are married; that, if they are not married, the priest will marry them, unless there is some civil or ecclesiastical impediment;- that if the parents are not married and cannot be married, the baptismal records are marked with the notation “natural child”; that the baptismal records concerning these children bore no such inscription; that the marriage records of the St. Louis Cathedral contain no record of the marriage of Joseph Gaudinse and Marguerite Maximillian; that the absence of such a record and the notation of “natural child” from the baptismal records created a strong presumption that the parents were legally married before the first baptism was performed at the Catholic Church.
 

 The alleged widow also corroborated her testimony by producing seven different certified copies of authentic acts of sale, all signed by the deceased, whereby he acquired the real estate forming a part of his estate, bearing the respective dates of July 25, 1912, January 20, 1923, February 17, 1923, November 2, 1923, October 1, 1926, and May 25, 1928. All of these acts were executed before different notaries and con.tained the recital that Joseph Gaudinse “under oath, declared that he was married but once and then to Marguerite Maximil
 
 *849
 
 lian, with whom he is living and residing in this City.”
 

 She testified that it was through their joint efforts and earnings during the marriage that this property was ■ acquired.
 

 The cashier and secretary-treasurer of two building and loan associations in New Orleans testified that Olga Gaudinse, one of the interveners and the daughter of Joseph Gaudinse, had for many years called at their respective offices to make payments on account of the real estate which deceased was purchasing through their association, and that this property is included in the inventory herein.
 

 The alleged widow also corroborated her testimony by exhibiting a membership certificate of the New Orleans Undertaking Company, issued to Joseph Gaudinse for death benefits, dated July 19, 1909, reciting the names of his children, who had been born and were living at that time, and who are some of the interveners herein.
 

 Several neighbors testified that they knew the deceased before his marriage; that he introduced Marguerite Maximillian to them in New Orleans shortly after their marriage, as his wife'; that the parties lived together as husband and wife for nearly 35 years, publicly and openly; that there was born to them nine children, five of whom they reared, supported, and educated; that Joseph Gaudinse gave them his name and introduced them in the community generally as the offspring of his marriage; and that five of the interveners herein are those chlidren.
 

 These five interveners, claiming to he legitimate children and heirs of the deceased, testified that they lived with their parents, Marguerite Maximillian and Joseph Gaudinse, and were always considered and introduced as the offspring of the marriage-, until the latter’s death in 1933; and that they had seen the marriage certificate and had heard their parents state that it had been stolen.
 

 The evidence of the administrator consisted of the testimony of four witnesses. One witness stated that she. was 68 years of age and had lived with the deceased as his common-law wife from 1883 to 1893; that she bore him a child, and that she had never heard of the deceased being married. Another woman corroborated this witness. A third woman testified that she had lived with the deceased as his common-law wife at various addresses and as late as 1914 or 1917, and had issue by him. Another witness stated that she knew the deceased and that he was living alone in 1923, and he had told her that he had never been married.
 

 In Succession of Jacobsen, 182 La. 151, 161 So. 185, 187, a case involving the proof of celebration of marriage of the claimants’ parents, it is said:
 

 “ ‘But proof of the celebration of a marriage between parents is not indispensable to the children’s right to inherit from them, for such proof cannot always be made. In the absence of such proof, however, they must show that they were born of parents who were so living together' and so conducting themselves toward each other in society, holding themselves out as man and wife, as to raise the presumption that they were married. When the facts shown are
 
 *851
 
 such as to raise the presumptijpn of marriage, the further presumption that their children are legitimate necessarily follows.’ * * *
 

 “It necessarily follows that the interveners in the case at bar, in order to establish the legitimacy of Tony Jacobsen, must prove the marriage of his mother, Fanny Jacobsen, to his father.
 
 The marriage certificate would be the best evidence, but in the event that the certificate could not be produced, the marriage might be proved by secondary or other competent evidence.
 
 In this case there is no evidence of the marriage of the decedent’s mother and his father other than the statements of the interveners’ father and decedent’s mother to interveners, and also the husbands of Sophie Jacobsen and Annie Jacobsen, neither of whom knew the father of decedent, or even saw him. There is nothing in the record to show that the father of decedent and his mother ever lived together as man and wife or even held themselves' out as husband and wife. In the absence of such evidence, there cannot be a presumption of a marriage which is necessary to raise the presumption of the legitimacy of decedent.
 

 “The court said, in the case of Boykin v. Jenkins, supra [174 La. 335, 140 So. 495]:
 

 “ ‘A presumption of legitimacy arises also from proof of legitimate filiation. The Code (article 193 et seq.) prescribes the methods of proving legitimaté filiation. It may be proved by a transcript from the register of birth or baptism. * * *
 

 “ ‘ “If the register of births and baptisms is lost, or if no such register has been kept, it suffices for the child to show that he has been constantly considered as a child born during marriage.” Civ.Code, art. 194. * * *
 

 “ ‘The making of such proof raises the presumption that the child was born during or as a result of marriage, and is therefore legitimate.’ * * *
 

 “From an examination of article 193 et seq. of the Civil Code and the above quotation from the opinion of the court, we can come to but one conclusion, and that is that legitimate filiation can be proved, and the best evidence to prove it is the register of births and baptisms, and it is only in the absence of such registration, either if los' or destroyed or not made, that ‘it suffice:for the child to show that he has been con stantly considered as a child born durin" marriage.’ Civ.Code, art. 194 and see, also, Civ.Code, art. 195.” (Italics ours.)
 

 See, also, Blasini v. Succession of Biasini, 30 La.Ann. 1388; Succession of Llulo, 44 La.Ann. 61, 10 So. 406; Eames v Woodson et al., 120 La. 1031, 46 So. 13, Watson v. Lawrence, 134 La. 194, 63 So 873, L.R.A.1915E, 121, Ann.Cas.1916A 651; Powers v. Charbmury’s Ex’rs, 35 La.Ann. 630.
 

 In the case of Johnson v. Hogan & Winchester Transfer Co. et al., 171 So. 467, 468, where the question of the claimant’s right to recover compensation depended upon her marriage to the father of the deceased, the Court of Appeal, First Circuit, said:
 

 
 *853
 
 “There seems to have been a lack of uniformity in the decisions of the Supreme Court on the quality and amount of proof required to support a marriage contract, but it appears to be well settled
 
 now
 
 that once the party alleging the marriage contract has shown his or her inability to produce the marriage license or certificate, or some other written document, secondary proof in the way of oral testimony will be received, and if found strong and reliable enough, will be accepted as proof of the contract. The decisions on this question seem to have been influenced by the presumption that a man and woman living together and so conducting themselves and having the general reputation in the community of being husband and wife were actually married. But in all the cases where they were held to have been married, the evidence was, as the court said it must be in the case of Watson v. Lawrence, 134 La. 194, 63 So. 873, 874, L.R.A.1915E, 121, Ann.Cas.1916A, 651, ‘consisfent and cogent.’ True it is that, in that case the court also said that the marriage ‘may be proved by the testimony (if admissible) of one of the parties to the marriage,’ but it certainly meant that the party testifying must be a reliable person and the testimony must be of a substantial nature and convincing character. Any other meaning could not be reconciled with its other statement to the effect that ‘the evidence upon the subject must be consistent and cogent.’ ”
 

 In the instant case, the interveners proved that a marriage certificate showing the •celebration of the marriage of the deceased and Marguerite Maximillian was in existence and had been stolen. This, evidenced with the strong corroborated proof, satisfied the learned trial judge of the interveners’ inability to produce the primary evidence consisting of the marriage certificate. Under these circumstances, he ruled that secondary evidence was admissible.
 

 Counsel for the administrator has referred us to the case of Green et al. v. New Orleans, S. & G. I. R. Co., 141 La. 120, 74 So. 717, in which this court stated that it is an elementary proposition under article 105 of the Civil Code that, in order to prove a contract of marriage, the proponent should be required to produce a certified copy of the public records, unless it be shown that the record- has been lost or destroyed, and, until such showing is made, no secondary or inferior evidence thereof is admissible to create a presumption that the marriage had been contracted. It is true that the court did say this, but that in effect is a reaffirmation of what was stated in some of the authorities cited supra and followed by the later cases. The court, notwithstanding the fact that no witness to the celebration of the marriage appeared and testified to that fact, and no thorough search had been made to determine if a public record of the marriage existed, and in the absence of proof that if it did exist, it had been mislaid or destroyed, considered the secondary evidence introduced in the case and finally concluded that it was not sufficient to create a presumption of marriage. The case is, therefore, not apposite here.
 

 It is our opinion that interveners laid a proper foundation for the introduc
 
 *855
 
 ti on. of secondary evidence and that the ruling of the trial court in receiving it is correct.
 

 On the issue' of whether or not the secondary evidence was sufficient to raise a presumption of marriage and, therefore, a presumption that the children were legitimate, the record shows that the secondary evidence overwhelmingly established a presumption of marriage. It was pointed out by the trial judge in his reasons for judgment that the deceased at a time unsuspicious and against his own interest had declared under oath before different notaries in several authentic acts that he had been married once and then to Marguerite Maximillian. We conclude that the evidence amply supports his opinion.
 

 For the reasons assigned, the judgment is affirmed at appellant’s costs.
 

 O’NIELL, C. J., concurs in the decree.
 

 ROGERS, J., absent.