This is a suit for compensation brought by a mother who claims to have been dependent, within the meaning of our State Compensation Statute, Act No. 20 of 1914, upon the earnings of her deceased son who was employed by the defendant at the time he lost his life by accident during the course and scope of his said employment. In her petition she alleges that her said deceased son was unmarried and is survived by no descendants; that at the time of his death he resided with her and supported her and consequently she is entitled to receive compensation from his employer, defendant herein, at the rate of $7.80 per week which is 65% of his weekly wages of $12, for a period of three hundred weeks. In addition she claims the sum of $150 for funeral expenses of her deceased son.
The defendant answered admitting the nature of plaintiff's deceased son's employment and his death by accident, but denied *West Page 103 
that she was in any manner dependent upon him for her living and that he lived with or contributed to her support. He avers that on the contrary the decedent was, and had been living with a concubine with whom he was having children and that his entire earnings were consumed in maintaining the household which he had thus established.
The question of dependency seems to have been the only issue presented in the lower court and concededly the only one now before this court. The district judge resolved the question against the plaintiff and dismissed her suit. From the judgment so decreeing she has taken this appeal.
The testimony indicates that the plaintiff is a negro woman about fifty years old. She was legally married to the father of her deceased son, Andrew Dudley, who was one of three children. The other two, another son and a daughter are still living. At the time her son Andrew was employed by the defendant, she was living with a man named Charlie Young. What their relations were is not shown positively but it appears doubtful that he was supporting her as his wife for there is proof to the effect that she worked on a strawberry farm during part of the time she lived with him. Plaintiff, of course, testified to the generous contributions made to her support, in groceries and cash money as well, by her deceased son. She produced several witnesses who testified in support of her claims. Some of these, it may be said, were negro women who are also former concubines of her son and whose testimony is so exaggerated that it is hardly worth the while to consider it. Her son, Ivy Dudley, also testified as her witness and his testimony, it must be said, is a bit more impressive. He states that he and Andrew both helped their mother principally by buying groceries for her. He was married and supporting his wife and could only give his mother about $2.50 in groceries every two weeks. He says that Andrew gave her more than he did. Jeff August, on whose farm the plaintiff picked strawberries also testifies that Andrew brought his mother groceries when she was living at his house.
It is shown that Andrew Dudley at the time he died, was living in concubinage with a woman named Mabel Williams. She had two children of her own and of their illicit relation there was born a child who was still an infant when Andrew died. They occupied a room in the house of her stepfather Billy Hamp, and with her mother, Lula Hamp, they all lived together. He earned approximately $12 per week and it appears that he paid $1 each pay day, or at the rate of about 50¢ per week for his share of the transportation to and from work in a car belonging to one of his fellow employees. It is the defendant's contention that it took all the net remaining part of his earnings to maintain the family he had established with his common law wife and that there was nothing left with which he could make any contribution to the support of his mother.
Several witnesses testified for the defendant but their testimony is all of a negative character and to the effect that they never saw Andrew give anything in the way of cash or groceries to the plaintiff, or merely, that he had told them that he did not contribute to her support. The two who were in a position to know the circumstances surrounding the maintenance of the household he occupied, were his concubine's mother and stepfather, Lula and Billy Hamp. They were also called as witnesses by the defendant and if their testimony is to be given any consideration whatsoever there is clearly established a preponderance of proof in favor of the plaintiff that her deceased son did assist her at least to the extent of giving her groceries more or less regularly. The defendant, in making them his witnesses, vouched for their veracity, he did not even try to impeach their statements and certainly their testimony cannot lightly be brushed aside. The district judge if he had reason to disbelieve them or all of plaintiff's witnesses did not make them known in the record as he did not file a written opinion. Under our appreciation of the facts as shown we find ourselves constrained to disagree with his findings.
Plaintiff has not shown any definite amount regularly contributed to her support by her deceased son but she has shown that she was partially actually dependent upon his earnings at the time of the accident which caused his death, within the meaning of subsection 2, section 8 of the Compensation Statute as amended by Act 242 of 1928. Under that provision of the statute, when the actual amount of the contribution is known there is a formula on which the weekly rate of compensation due the dependent can be worked out. In the absence of proof of any definite or regular amount of contribution, it is, in our opinion, the minimum rate of weekly compensation *West Page 104 
of $3 as fixed by subsection 3 of section 8 of the act, as amended by Act 242 of 1928, which should prevail. There is no proof found in the record regarding the demand for funeral expenses in the sum of $150, nor is it shown by whom any funeral expenses whatsoever were paid. This item, we do not think can be allowed.
For the reasons stated it is now ordered that the judgment appealed from be and the same is hereby reversed and set aside and it is further ordered that there be judgment in favor of the plaintiff, and against the defendant ordering and decreeing the said defendant to pay plaintiff compensation at the rate of $3 per week for the period of three hundred weeks from April 25, 1939, until paid, with interest at the rate of 5% on each weekly payment from the date it accrued until paid in full. It is further ordered that the defendant pay all costs.