This is a suit by Horace Patin for and on behalf of and as the natural tutor of Raymond Patin in which he seeks compensation at the rate of $20 per week for a period not exceeding 300 weeks, commencing on June 17, 1948, from defendants, T. L. James Co., Inc., and its compensation insurer, the National Surety Corporation of New York.
He alleges that on June 17, 1948, Joe Johnson, while in the employ of the defendant, T. L. James Co., Inc., as a common laborer, while performing work within the scope of his employment, was killed; that the said Joe Johnson was never married; that Joe Johnson and Mary Patin, divorced wife of Jonas Dangerfield, lived together, holding themselves out to the public as husband and wife, for many years prior to Oct. 6, 1936, and continued to so live from and after said date until the death of said Johnson.
Plaintiff further alleges that the said Raymond Patin was born on September 24, 1936, issue of the marriage of Angie Lee Williams and plaintiff; that said Angie Lee Williams died on or about October 15, 1936; that on or about October 6, 1936, Angie Lee Williams and himself each requested Mary Patin and the said Joe Johnson to take said Raymond Patin as their child and to rear and care for him as his adoptive parents; that the said Mary Patin and the said Joe Johnson, from and after on or about October 6, 1936, have had the said Raymond Patin in their home and have there reared him as their own child; that from and after the date of October 6, 1936, the said Mary Patin and Johnson, up to Johnson's death, supported and maintained said child, Raymond Patin, as a member of their family in their home as their adoptive child. Upon that theory and upon these allegations, plaintiff pursues this *Page 305 
demand against the employer and its insurer under the Workmen's Compensation Act of this State. Act No. 20 of 1914, as Amended.
Defendants filed exceptions to the procedural capacity of Horace Patin, and exceptions of no right or cause of action to the claim of Horace Patin. Letters of tutorship were filed and the exceptions of no cause or right of action were overruled. These exceptions appear to be abandoned as they are not urged in this court. Defendants thereafter filed their answer, in which they admit that Joe Johnson, on June 17, 1948, while in the employ of defendant James, as a common laborer, while performing work within the scope of his employment, was killed and they deny all the remainder of plaintiff's allegations.
After the defendants answered, but before the case was fixed for trial, Sophie Braud Johnson intervened in the suit and alleged that the deceased Joe Johnson was her lawful son by her marriage to one Andrew Johnson; that the said Joe Johnson contributed to her support during his lifetime and that she was dependent upon this support so contributed for her livelihood; and that she alone was entitled to recover compensation from the defendants as the surviving parent in the sum of $20 a week for 300 weeks.
Upon these issues, the case was tried, resulting in a judgment in favor of intervenor, Sophie Braud Johnson, and against the defendants, for the sum of $3 per week for a period of 300, commencing on June 17, 1948; and in further judgment in favor of the defendants and against the plaintiff, Horace Patin, Tutor of the minor, Raymond Patin, dismissing the suit of Horace Patin. Plaintiff, Horace Patin, has appealed. The defendants have appealed as to the claim of Sophie Braud Johnson.
This is a companion case to Patin v. T. L. James Co., Inc., et al., 39 So.2d 177, decided by this court on March 7, 1949, and in which we refused a rehearing. In that case we held that Mary Patin, the admitted concubine of the deceased, Joe Johnson, was not entitled to claim compensation for Joe Johnson's death.
It appears from the pleadings, the record and the arguments, both oral and in brief, the first question to be decided in this case is whether or not the intervenor, Sophie Braud Johnson, was married to Andrew Johnson, and therefore the lawful mother of Joe Johnson, decedent, who was the issue of the alleged marriage between the said Sophie Braud and Andrew Johnson. With regard to this question, we find a well considered written opinion by the trial court and from which we quote:
"I have carefully read the testimony bearing on this question, and while I am perfectly willing to concede that the evidence pertaining to the alleged marriage of Sophie Braud and Andrew Johnson is not entirely satisfactory, there is some evidence sustaining her allegation that she was actually married to the deceased, Andrew Johnson. This testimony consists of intervenor's own testimony, that of Martha Jones and of her brother, Charlie Braud, all of whom testified that Sophie was married to Andrew Johnson at the Mount Bethel Church in the Parish of Iberville by the Rev. Frank Williams, pastor of said church. It was stipulated by counsel for all the parties in the suit, that if the Clerk of Court, Philip M. Castro of the Parish of Iberville, were called to testify as a witness here, he would testify that according to the records of the Parish of Iberville, no marriage license was issued to Sophie Braud (Breaux) (Blow) and Andrew Johnson.
"Learned counsel for plaintiff, Horace Patin, Tutor, in support of his argument that the evidence is insufficient to prove a marriage between Andrew Johnson and Sophie Braud, has cited the case of Succession of Dotson et ux., 202 La. 77,11 So.2d 488. This case however, is not entirely in point here for the reason that in that case it was shown that although the plaintiff who claimed to have been married and to have lived with the alleged deceased husband for a number of years, before the death of the said alleged husband *Page 306 
married another man without securing a divorce from her alleged husband and without making any claim for alimony. The court in that case properly held that the presumption of marriage should not prevail under such circumstances, and particularly for the reason that no claim of marriage was ever made by the plaintiff until after the death of the deceased.
"There is abundant authority to the effect that marriage may be proved by any species of evidence not prohibited by law which does not presuppose a higher species of evidence within the party's power, and it has been repeatedly held that even though no record or documentary evidence of a marriage is produced, evidence is admissible to show that a marriage was actually celebrated.
"In the case of Cameron v. Rowland [208 La. 663], 23 So.2d at pages 283, 285 it was stated: 'No record or documentary evidence of a marriage was produced and no one testified to having witnessed one. But, over defendant's objection, evidence aliunde was admitted on the authority of the cases cited below and the jurisprudence established by them, and others, that marriage, like other contracts, may be proved by any species of evidence not prohibited by law which does not presuppose a higher species of evidence within the power of the party. Holmes v. Holmes, 6 La. 463, 26 Am.Dec. 482; Philbrick ['s Heirs] v. Spangler, 15 La. Ann. 46; Blasini v. Blasini, 30 La. Ann. 1388; Succession of Curtis, 161 La. 1045, 109 So. 832; Succession of St. Ange, 161 La. 1085, 109 So. 909; Succession of Kneipp, 172 La. 411, 134 So. 376; Boykin v. Jenkins,174 La. 335, 140 So. 495; Succession of Anderson, 176 La. 66,145 So. 270; Succession of Gaudinse, 187 La. 844, 175 So. 595; Gray's Succession, 201 La. 121, 9 So.2d 481.'
"In the case of Holmes v. Holmes, supra, the Court said: 'Cohabitation as man and wife, furnishes presumptive, evidence of a preceding marriage. It is not to be presumed that those who held themselves out in society as man and wife, who are rearing a family of children at their domestic board, to whom the father gives his name, over whom he exercises a parent's authority, and administers a parent's protection and support, are living in open disregard of public morals, and that their common offspring are bastards; such a family is already in the possession of a civil condition or status, not to be questioned lightly and collaterally.'
"In many cases our Supreme Court has adhered to the proposition that the presumption in favor of marriage is one of the strongest known to the law where there has been a long period of cohabitation, and particularly where children have been born to the parties and these children carry the name of their father. It may be that this presumption, in view of the evidence offered in this case, is not applicable. However, being a workmen's compensation suit and it appearing that the intervenor was to some extent dependent upon Joe Johnson, who admittedly was her son, I am inclined to the view that the presumption of marriage between the intervenor and Andrew Johnson should prevail. The only evidence offered here to disprove the alleged marriage was of a negative character, and in my opinion, insufficient to overcome the presumption of marriage.
"In my opinion, in these circumstances the claim of the intervenor should prevail. However, the evidence shows that the mother of the deceased Joe Johnson was only partially actually dependent upon the earnings of her deceased son at the time of his death. The most that can be said from the evidence offered on this point is that the support given intervenor by the deceased Joe Johnson averaged from $1.00 to $4.00 a week. Therefore, as was held in Dudley v. Martin [La. App.],4 So.2d 102, in the absence of proof of any definite or regular amount by deceased's employer to the dependent, the amount payable is the minimum rate of weekly compensation of $3.00, as fixed by the Act, and, in my opinion, this is the award that should be made to intervenor in this case."
After a careful review of the record, and the citations relied upon by the trial court, we find ourselves in accord with his conclusion as therein stated. The next and very serious question presented *Page 307 
is the effect of this conclusion upon the claim of the minor. It is the contention of the defendant that the claim of Horace Patin in behalf of his minor son, Raymond Patin, as a member of the family of Joe Johnson, should fall.
It is shown that Mary Patin and Raymond Patin were living with the decedent. The minor Raymond Patin was not the child of decedent; his claim is based solely on the fact that he is a member of the family of decedent, Joe Johnson.
In the case of Lunkin v. Triangle Farms, La. App.,24 So.2d 213, 215, we had under consideration the interpretation of Section 8, paragraph 2, subsection E., subparagraph 8, under very similar facts as in this case, and we stated: "Our understanding of this portion of the Workmen's Compensation Act is that it lists dependents in the order of their right to recover compensation. * * * In our opinion, the statute means that if there is no widow, widower, child, parent or brother or sister entitled to claim compensation, then 'other dependents' have the right to claim it. Under our interpretation, persons falling under the classification of 'other dependents' have no right to claim compensation if there is a dependent parent entitled to compensation."
In the case of Williams v. Jahncke Service, Inc., La. App.,38 So.2d 400, 403, our brethern, the Orleans Court of Appeal, had practically the same issue, and stated: "The statute provides for three different groups of dependents and makes the right of those in the second, or in the third group, dependent upon whether or not there is in existence a claimant in one of the superior groups. Those groups are: (1) widows and children — (widowers in some instances); (2) dependent fathers and mothers; and (3) brothers and sisters or other members of the family. The right of the second group — mothers and fathers — come into existence only 'if there be neither widow, widower nor child * * *' and the right of the third group, that is, brothers and sisters and other members of the family, comes into existence only 'if there be neither widow, widower nor child, nor dependent parent entitled to compensation * * *' ".
The Court held: "Now since the claim of the minor in the case at bar can be based only on the fact that she is a member of the family and not on the fact that she is a child of the employee, it is evident that her claim depends upon whether or not there is any superior claimant, and it is shown that there is a legal widow, Stella Brown Cyprian."
It is contended by the plaintiff that these decisions are erroneous and are not the law of Louisiana on this point. He relies on the cases of Hamilton v. Consolidated Underwriters, La. App., 21 So.2d 432, and Dangerfield v. Indemnity Ins. Co.,209 La. 195, 24 So.2d 375, which cases he contends are squarely in conflict with the Lunkin case, supra. He makes the observation that in the Lunkin case a rehearing had not been applied for nor an application made to the Supreme Court for a Writ of Certiorari while in the Hamilton case, a rehearing had been applied for and also a writ of certiorari to the Supreme Court had been applied for and denied. We may say at this moment that a writ of certiorari was granted by the Supreme Court in the Williams case and the case is now pending in that Court.
In the Hamilton case, supra, Mrs. Bertha Hamilton, the mother of the decedent, individually and as natural tutrix of her three minor children, minor brothers and sisters of the decedent, claimed from the defendant the maximum compensation under the law, alleging total dependency, individually and as tutrix, upon her son at the time of her death. The evidence showed that the decedent lived continuously in the family home except for a period of his service in 1941 in the Civilian Conservation Corps, and while employed in the latter part of 1942 and the early part of 1943, some two months, in the City of Monroe, the Court found that [21 So.2d 433] "The record is barren of any testimony that in the remotest degree negatives the contention of total dependency advanced by the plaintiff individually and as tutrix. On the contrary, the record affirmatively sustains that contention."
In reference to defendant's contention that a surviving parent precludes or bars *Page 308 
the brothers and sister from claiming compensation, the Court stated: "It is argued that the words 'nor dependent parent entitled to compensation' (as found in paragraph 8, Division (E), subsection 2, Section 8 of the Employers' Liability Act), when studied in the light of the context, have the effect of barring brothers and sisters from claiming compensation if there exists a dependent parent entitled thereto. This construction of this portion of the statute is correct, and if there were no other provisions therein on the subject the mother's right to compensation would undoubtedly exclude the dependent brothers and sisters from claiming any."
It also said: "In the present case the deceased brother admittedly was a member of the family with whom he lived; in addition the claimants for compensation on account of his death are his mother, brothers and sister, blood relations. Therefore, all of them within the meaning of this provision (that portion of paragraph D, Subsection 2, of Section 8 of the Employers' Liability Act) of the statute may be denominated 'legal dependants' of the deceased if the facts warrant fixation of that status. We have so found."
"In addition to being a member of the family, in reality the deceased son's relation to, for all legal intents and purposes, was that of head. He was the bread winner and to him the mother, brothers and sister looked, not for luxuries, but for the necessities of life. He met the responsibility squarely and discharged it."
The Court appears to have been influenced to a great extent by the decision in the case of Archibald v. Employers' Liability Assurance Corp., 202 La. 89, 11 So.2d 492, 493, a case wherein it was held that under the general provisions of the Employers' Liability Act the dependent father-in-law, mother-in-law, and two sisters-in-law, constituting the family of a deceased workman, could recover compensation on account of his death. In the Archibald case the court stated: "The plaintiffs' right to recover compensation rests entirely upon whether or not they are dependent members of the family of the deceased employee within the meaning of the Act", and then held as hereinabove stated.
These are the only cases bearing directly on the question. There are other cases wherein it decided that certain claimants were members of the family such as the case of Thompson v. Vestal Lumber Mfg. Co., 208 La. 83, 22 So.2d 842, wherein it was held that two illegitimate children of the decedent were members of his family, dependent upon the decedent's earnings for support, and were entitled to claim compensation. It is to be noted, however, that in that case the children were illegitimate children of decedent, and that it was the legal and moral duty of the father to support his illegitimate children. In this case, like in the other cases, it does not appear that the decedent had left a dependent as listed in Paragraph "E" of Subsection 2 of Section 8 of the Act.
Since the Supreme Court refused a writ of certiorari in the Hamilton case and granted a writ of certiorari in the Williams case, it may be that we were wrong in our holding in the Lunkin case that persons falling under the classification of "other dependents" have no right to claim compensation if there is a dependent parent entitled to compensation. At the present time, we feel that we should follow the Hamilton case and consider the Lunkin case overruled. We now hold that the claim of the mother of decedent does not foreclose the claim of Raymond Patin, if he falls in the category of a dependent member of Joe Johnson's family. We now pass to the question of whether or not the minor Raymond Patin can be considered as a member of decedent Joe Johnson's family.
The pertinent parts of the provision of the Employers' Liability Act are found in Section 8, Subsection 2(D), Act No. 242 of 1928, p. 359, and read as follows: "In all other cases, the question of legal and actual dependency in whole or in part, shall be determined in accordance with the facts as they may be at the time of the accident and death; * * *. No person shall be considered a dependent, *Page 309 
unless he is a member of the family of the deceased employee. * * *"
In two recent cases the Supreme Court has construed the word "family" as used in the quoted part of the section, holding in the Archibald case, supra, that in the absence of blood relatives, a father-in-law, mother-in-law and sisters-in-law who lived with the deceased employee prior to his death and were actually dependent upon him and were entitled to recover compensation from his employer's insurance carrier, and in the Thompson case, supra, that the children who are issue of a woman and a deceased employee who had never married, and who had lived with and were dependent upon him, likewise constituted his family and should recover under that provision of the statute. From these decisions, it safely can be said that the term "family" is used in a "more extensive sense, it comprehends all the individuals who live under the authority of another," Rev.Civ. Code, art. 3556, subd. 12, or "All that is required is a family or household and the existence of the dependency of a member thereof as illustrated by the facts of the particular case."
The facts show that Raymond Patin was the issue of the marriage of Angie Williams and Horace Patin, a brother of Mary Patin. Shortly after his birth, the mother of Raymond gave him to Mary Patin. Mary Patin, at that time, was living in open concubinage with Joe Johnson, at Baton Rouge. She took the child to her home at Baton Rouge. Thereafter, the mother of Raymond died. He has been with Mary Patin ever since, and with Joe Johnson until his death. She has provided him with food and clothing out of decedent's and her wages ever since taking him as her own in her home. The father, Horace Patin, plaintiff herein, made an allotment to the child while he was in service in the U.S. Army for a period of five and a half months, and occasional contributions toward his child's support. In other words, Raymond Patin, at the time of the death of Joe Johnson, was receiving partial support from three sources, Joe Johnson, the deceased employee; Mary Patin, his aunt and concubine of Joe Johnson; and Horace Patin, his father. Mary and Joe worked or were employed. Joe would give Mary his weekly earnings. The contributions made towards the support of Raymond by his father, Horace, was also received by Mary. With these moneys, including her personal earnings, Mary would pay all of the household expenses.
Under these facts, we conclude that the minor Raymond Patin comes under the meaning of the word "family" as set forth in the Archibald case, which meaning of the word was approved in the Thompson case, both supra, and that the said minor was partially dependent on the deceased Joe Johnson. However, the record does not show with certainty what was being contributed weekly by the decedent towards the minor's maintenance and therefore, we shall allow the minimum, that is $3 per week, as provided for by the Act.
For these reasons, the judgment appealed from is affirmed in so far as it grants compensation to the intervenor, Sophie Braud Johnson, and it is reversed, annulled and set aside in so far as it rejects the demand of Horace Patin, tutor of the minor, Raymond Patin, for compensation. It is now ordered that there be judgment in favor of Horace Patin, as tutor of the minor, Raymand Patin, and against the defendants, T. L. James Co., Inc., and National Surety Corporation of New York, in solido, in the sum of $3 per week for a period of not exceeding 300 weeks, commencing on June 17, 1948, together with legal interest on each weekly payment from its due date, until paid; defendants to pay all costs. *Page 310